## Pearce et ux. *versus* Wilson et. al.

1. A conveyance of land with an agreement, condition or stipulation incorporated therein that on payment of money the same shall become null and void or cease and determine or become of no effect, or that the estate granted shall be re-conveyed, is a mortgage ; and the form of the defeasance, if in writing, is immaterial.

2. A mortgage whose consideration in whole or in part is the stifling of a prosecution for a conspiracy to defraud, and for embezzlement as a bank officer, is void.

3. The ninth section of the Criminal Procedure Act (Act of March 31, 1860), does not authorize the settlement of a prosecution for conspiracy to defraud a bank and its depositors or of one for embezzlement as a bank officer.

[Pearce *v.* Wilson.]

October 19th, 1885. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN, and CLARK, JJ.

ERROR to the Court of Common Pleas of *Butler County:* Of October and November Term, 1885, No. 109.

This was an action of ejectment brought to September Term, 1882, by Mary A. and Jane Wilson against Alfred Pearce and Sarah J., his wife, to recover certain land situated in the borough of Harmony, Butler County.

On the trial, the plaintiffs after showing title to the land in question in Sarah J. Pearce, one of the defendants, gave in evidence a deed dated January 28th, 1878, for the same given by Alfred Pearce and Sarah J. his wife, to Henry Gœring, trustee, upon the following trusts :—That he shall hold the same for the use of the Harmony Savings Bank, and upon the further trust, that if Alfred Pearce aforesaid, or any one on his behalf, who shall within four (4) years from the date thereof pay to the said Harmony Savings Bank, its legal successor or representatives or to the said Gœhring, as trustee thereof, the sum of eight thousand dollars, without interest, then the said Gœhring, his heirs, executors, or administrators or successors in the trust, shall convey the said premises in fee simple, clear of all incumbrances to said Sarah J. Pearce or to such person or persons as Alfred Pearce may legally direct, and upon the further trust that, during the said period of four (4) years said parties of the first part shall have the use and occupation of the said premises, they to pay the taxes that may be levied and assessed thereon during said period, and keep the said premises in good repair.

Also a deed for the same property from Gœhring, trustee, to the defendant, dated May 27th, 1879, and one for the same from the Harmony Savings Bank to the defendants, dated December 24th, 1880. The defence gave evidence which showed that Alfred Pearce was the cashier of the Harmony Savings Bank and also a stockholder in the same ; that a bill in equity had been filed against Pearce and the treasurer of the company, one Palmer, in the Court of Common Pleas No. 1, of Allegheny county, charging them, *inter alia*, with not having paid the amount due for stock subscribed for by them, and also with fraudulently appropriating to themselves moneys of the bank; that on the information of Henry Gœhring, president of the bank, both of the indictments were found by the grand jury of Butler county at June Sessions, 1877, one, No. 81, against the said Palmer, Pearce and Austin Pearce, charging a conspiracy to defraud, the other, No. 82, against the two Pearces, charging embezzlement, making false dates on the bank books, making false bank statements and mutilating and destroying accounts with intent to

[Pearce *v.* Wilson.]

defraud; that the trial upon these bills was fixed for January 23d, 1878; that prior to that time negotiations for a settlement had been going on between the defendants and the bank; that at a meeting of the directors of the said bank, held January 22d, 1878, the following resolutions were passed, (as appeared by the minutes of the said directors given in evidence:)

"First, That the said bank will release, acquit, and forever discharge R. H. Palmer, Alfred Pearce and Austin Pearce, as well from all claims, demands and accounts set forth or claimed on a certain bill in equity now pending in the Court of Common Pleas, No. 1, of Allegheny county, by said bank against R. H. Palmer and Alfred Pearce, at No. 678, March Term, 1877; as well as from all other matters, things, claims, demands, bills, bonds, notes, obligations and liabilities, whether upon contract or tort, whether as bank officer or director of said bank; in consideration that the said R. H. Palmer, in addition to a conveyance hereafter made by him to the said bank, will convey to Henry Gœhring, in trust for the said bank, a certain house and lot, in fee, free from all incumbrances, situate on the corner of Penn and Fourteenth streets, in the city of Pittsburgh, county of Allegheny, state of Pennsylvania."

"Second, That Alfred Pearce make or cause to be made, executed and delivered to said Henry Gœhring, in trust for said bank, a deed of trust for a house and lot, situate in the borough of Harmony, Butler county, Pennsylvania, in which the said Pearce now resides; bounded on the north by Main street; east by a street called Spring street; south by a lot; west by a street,—containing one half acre, more or less, redeemable in four years from this date, upon the payment of $8,000.00, without interest. The said Alfred Pearce to retain possession of said house for said period of time; to pay all taxes assessed or levied thereon; and keep said house and property in good repair."

"Third, said defendants, R. H. Palmer, Alfred Pearce and Austin Pearce do release to said bank all their right, title, interest, claim, property, or demand whatsoever, in law, equity, or otherwise, of, in, to, or out of the charter or incorporation of said bank, stock, bonds, notes, bills, mortgages, judgments, real estates, dividends, or the estates of said bank, of whatever nature or kind, in possession of said bank, or of any person or persons for them, or due and owing by any person or persons, bank or banking associations, to the said Harmony Savings Bank, said defendants do release Henry Gœhring, the prosecutor in the several criminal cases now pending in the said Quarter Sessions of Butler county against

[Pearce v. Wilson.]

them, of and from all damages, claim or claims, action or actions, suit or suits for damages, which they may, might, or would be entitled to have or maintain against him at any time by reason thereof. Said defendants to pay all costs of said equity proceedings in Allegheny county, and to pay the costs of the criminal cases in Butler county. No bills for witnesses to be filed by the prosecutor for June Term, 1878.

And it is further resolved that our attorneys L. McQuiston and R. P. Scott, be, and are, hereby authorized to settle said cases upon the terms set out in the foregoing resolutions.

That assignments, releases, and the deed from Pearce and wife to Gœhring, given in evidence by the plaintiffs, were then drawn without professional assistance, to carry out the terms of the resolution, it being then 11 o'clock at night; that Mrs. Pearce being then at Harmony, some sixteen miles away from Butler, at which town the trial was to take place, one Lakstraw was sent to her to get her to sign the deed, or, as it was contended by the plaintiff, the mortgage; that Lakstraw brought the paper to Mrs. Pearce, who knew her husband was under indictment, and told her that if signed it would clear her husband of all his trouble, and also delivered to her a letter from the latter to the effect that if she signed the deed it would settle the criminal charges; that to relieve him of the criminal charges, and, according to Mrs. Pearce's testimony, for no other purpose, she signed the deed; that she was not in any way indebted to the bank; that the paper was then brought back to Butler, and on the cases being called for trial, the district attorney stated that he had no evidence to offer, whereupon a verdict of not guilty was rendered upon each bill.

The plaintiff presented, *inter alia*, the following points:—

" 1st. That the conveyance from Alfred Pearce and wife to Henry Gœhring in trust for the Harmony Savings Bank for the land in suit, dated January 23d, 1878, is an executed contract and deed in fee simple and vests the whole estate in the grantee."

" 2d. That being an executed contract or deed in fee simple, the same cannot be avoided, if the consideration thereof was the settlement of the bill in equity at No. 678, March Term, 1877, in Court of Common Pleas, No. 1, Allegheny county, Pennsylvania, wherein large sums of money were claimed including this settlement of the criminal prosecutions at Nos. 81 and 82, June Sessions, 1877, in Quarter Sessions of Butler county, Pennsylvania."

" 4th. If the jury find that the said conveyance, whether a deed or mortgage was any part of the considerations of the settlement of said criminal prosecution, and that the same

1 AMERMAN—2

[Pearce *v.* Wilson.]

was done in pursuance of the resolutions of the bank, was assented to and approved by the district attorney and the court, that their said settlement was legal and the plaintiffs should recover."

" 5th. Under the resolutions of the bank directors, the deeds indorsed, and so forth, to be executed and delivered by Palmer and the Pearces were to be upon the sole consideration of the release by the said bank of its civil claims against them."

" 6th. The settlement of or suppression of the criminal prosecutions is not expressed in said resolutions as any part of the consideration of the things to be done by Palmer and Pearce."

" 7th. The resolutions merely authorize the bank's attorneys to settle the criminal prosecutions upon the consummation of the settlement of the pending preceding things."

" 8th. It results as a consequence of the three foregoing propositions that unless the bank's attorneys under this authority did something to stop the criminal prosecutions other than to procure the writings to be executed and in readiness before the verdict and their delivery afterwards, then there was no settlement of the criminal cases that can affect the consideration of the deed from Pearce."

" 9th. That the criminal prosecutions at Nos. 81 and 82, June Sessions, 1877, Quarter Sessions of Butler county, could be settled under the provisions of section 9, Act 31st March, 1860, Criminal Procedure Act, and that, therefore, plaintiffs can recover."

All of which points were affirmed by the court, HAZEN, J. (1st to 8th assignments of error.)

The defendant presented to the court, *inter alia*, the following points:

" 1st. That the instrument of January 23, 1877, is a mortgage for $8,000, payable in four years, without interest."

" 3d. If the jury find that Sarah J. Pearce was not in debt to the bank when she secured the instrument dated January 23d, 1878, and never received, nor was to receive, any consideration other than the liberty of her husband, as stated in the fourth point, then the said instrument is voidable at her election and she can defend plaintiffs' claims to recover thereon in this ejectment."

" 4th. If the jury find that Sarah J. Pearce, the wife of her co-defendant, signed the instrument of January 23d, 1878, to settle the cases of the Commonwealth *v.* Alfred Pearce et al., at Nos. 81 and 82, June Term, Quarter Sessions of Butler county, in evidence in this case to stifle the said prosecutions or to save her husband from impending danger of imprison-

ment, such a transaction is illegal, against public policy, and the said instrument cannot become a valid deed or mortgage to sustain this ejectment."

"5th. If the jury find that the said instrument of the 23d of January, 1878, was executed and delivered to settle said criminal prosecutions at Nos. 81 and 82, June Term, 1877, Quarter Sessions of Butler county in evidence in this case, the plaintiffs cannot recover."

"6th. If the jury find that any part of the consideration or inducement to the execution of the instrument made by the defendants, bearing date January 23d, 1878, was the settlement of the prosecutions against Alfred Pearce et al., at Nos. 81 and 82, June Term, 1877, Quarter Sessions of Butler county, such consideration is illegal, the settlement of said prosecutions unlawful, and the said instrument will not be enforced, but it is void as against public policy." Which points were refused." (9th to 13th assignments of error.)

In his general charge the learned judge said:—"The question here turns upon this conveyance we have just referred to. Whether it be a deed or mortgage is immaterial in this issue, but we say to you that we construe it to be a deed of general warranty conveying the land in fee simple to the grantee therein named, if the deed has not been procured by fraud from Mrs. Pearce, who seems to have been by the chain of title presented, the legal owner at the time of this conveyance, then we say to you the plaintiff is entitled to recover." (14th assignment of error.)

Verdict for plaintiff for land described in the writ, with 6 cents damages and 6 cents costs—and judgment thereon. The defendant took this writ, assigning for error the affirmance and refusal of the points above set out, and the portion of the general charge quoted.

*Thompson* (with him *Chas. McCandless, C. Walker* and *R. P. Scott*), for plaintiff in error.— (1) The writing executed by Alfred Pearce and wife, bearing date January 23d, 1878, was a mortgage. The form of the defeasance is not material if the intention is fairly indicated: Redenbaugh v. Ludwick, 31 Pa. St. 131; Wilson v. Shoenberger, id. 295; Kelly v. Thompson, 7 Watts, 401; Kerr v. Gilmore, 6 id. 405; Myer's Appeal, 42 Pa. St. 518; Rankin v. Mortimere, 7 Watts, 372; Guthrie v. Kahle, 46 Pa. St. 331.

(2.) The mortgage was invalid because given to settle a criminal prosecution. Every contract whose consideration is the stifling of a prosecution for a felony or a misdemeanor of a public nature is absolutely void: 2 Chitty on Cont. 991; Town of Hinesburg v. Sumner, 31 Am. Dec. 599; Clark v.

[Pearce v. Wilson.]

Pomeroy, 12 Allen, 557; Bredin's Appeal, 11 Norris, 241. If *part* of the consideration is the stifling or a discontinuance of a criminal prosecution the whole contract is void: Daimouth *v.* Bennett, 15 Barb. 541. The contract between the bank and the Pearces had an entire consideration. The distinction sometimes taken between compounding a felony and a misdemeanor is purely artificial, and has become meaningless; the only real difference now existing is as to the power of the jury to impose costs.

This is not a case of settlement under the ninth section of the Criminal Procedure Act, for the cases here were not settled before the magistrate, nor by leave of court given to the entry of a *nol. pros.* Besides which, the Act does not permit the settlement of a prosecution for a public offence, and any security given therefor will be void: Riddle *v.* Hall, 3 Out. 116; Sharp *v.* Phila. Warehouse Co. 14 Phila. 513.

*Dana* (with him *L. McQuiston, Long, Martin* and *Gardner*) contra.—An absolute sale will not be converted into a mortgage merely by a covenant to reconvey, provided the same price be paid to the grantee within a certain time: Sevier *v.* Greenway, 19 Ves. 415, note; Holmes *v.* Grant, 8 Paige, 243; Jones on Mtges., §§ 258, 265, 272, 275. The delivery and recording of the deed made an executed contract, with possession and seizin in the grantee. Hence a valid consideration is presumed, and the facts constituting the defence in this case cannot avoid the contract: Act May 28, 1715, § 5; 1 Sm. Laws, 95; Fox *v.* Cash, 11 Pa. St. 211; Hipple *v.* Rice, 28 Id. 406; 1 Story on Contracts, § 490; Swan *v.* Scott, 11 S. & R. 164. Even a conveyance made in composition of a felony cannot be avoided by the grantor: Worcester *v.* Eaton, 11 Mass. 368.

The plaintiffs below, being *bona fide* purchasers for value, without notice of any facts which would change the deed into a mortgage, and also without notice of the facts set up as a defence below, took an indefeasible title. The possession of a grantor is not constructive notice of any right or interest which he may have antagonistic to his deed upon record, and the purchaser from his grantee is not put upon inquiry as to such interest: Van Keuren *v.* R. R., 9 Vroom, 165; Rowe *v.* Ream, 9 Out. 545.

A criminal charge of embezzlement by a bank officer can be legally settled, and the settlement will not vitiate a contract of which it is the consideration: see Steinbaker *v.* Wilson, 1 Leg. Gaz. Rep. 76; Geier *v.* Shade, 16 W. N. C. 222.

The resolutions of the bank should be confined, in effect, to the release of Pearce from his civil liability, which it was

[Pearce v. Wilson.]

sought to enforce by bill in equity, and to a mere subsequent authority given to the bank's attorneys to settle all the cases, including the indictments. The taking of the verdicts, after stating to the court that the matter had been amicably settled, was, in effect, the same as the entry of a *nol. pros.*

Mr. Justice STERRETT delivered the opinion of the court January 4th, 1886.

In January, 1878, the plaintiffs in error, Alfred Pearce and Sarah J., his wife, for the nominal consideration of one dollar, conveyed the premises in dispute to Henry Goehring upon the following trusts, to wit: "That he shall hold the same for the use of the Harmony Savings Bank, and upon the further trust that if Alfred Pearce aforesaid, or any one on his behalf, shall, within four years from the date thereof, pay to the Harmony Savings Bank, its legal successor or representatives, or to said Goehring as trustee thereof, the sum of $8,000 without interest, then the said Goehring, his heirs, executors, administrators, or successors in the trust, shall convey the said premises in fee simple, clear of all incumbrances, to said Sarah J. Pearce, or to such other person or persons as Alfred Pearce may direct; and upon the further trust that during the said period of four years the said parties of the first part shall have the use and occupation of the said premises, they to pay the taxes that may be levied and assessed thereon during said period, and keep the said premises in good repair," with covenant of general warranty, "except and subject to the trust aforesaid."

In May, 1879, Goehring, as trustee of the bank, and shortly afterwards the bank itself, conveyed the premises to Mary A. and Jane Wilson, who, after expiration of the four years, brought this action of ejectment to recover possession of the premises.

The parties differ widely as to the nature of the first-mentioned instrument, plaintiffs in error contending it is a mortgage to secure the payment of $8,000 in four years, and defendants claiming it is an absolute conveyance with the right to demand a re-conveyance, provided the sum named be paid within the time specified. Strictly speaking, it is a deed of trust, such as is employed in some of the states for the same purposes that mortgages are generally used here. Under our decisions, it is clearly a defeasible conveyance, or mortgage, reserving to the mortgagors the right to retain possession of the mortgaged property until default is made in payment of the sum for which it is pledged as security. Nothing is better settled than that a conveyance of land, with an agreement, condition, or stipulation incorporated therein, that the same

shall become null and void, or cease and determine, or become of no effect, or that the estate so conveyed shall be re-conveyed when the money is paid, or other equivalent expression, is a mortgage and not an absolute conveyance.  Until quite recently, a deed absolute on its face, accompanied with an oral agreement to re-convey upon payment of a specified sum, was invariably held to be a mortgage, but it is now necessary that the defeasance be in writing.  The form of the defeasance is immaterial if the intention clearly appears from the language employed.  Any stipulation or agreement that plainly indicates an intention to return or re-convey the property, upon payment of the sum named, constitutes a mortgage. Our books abound in authorities to that effect.  In this case, it clearly appears on the face of the deed itself that it was intended as security for payment of $8,000.  If there was any doubt as to that, the testimony is quite sufficient to dissipate it.  The resolution of the bank, given in evidence, contemplates nothing more than a conveyance of the property in pledge, and expressly recognizes it as redeemable, in four years from that date, upon the payment of $8,000.

The most that plaintiffs below can claim is that the instrument is a valid mortgage, and they, as assignees thereof, after default in payment within the time stipulated, have a right to the possession of the mortgaged premises, to be held by them until from the net rents, issues, and profits, or otherwise, the sum secured shall be fully paid.  Their position, as assignees of the mortgage, is no better than that of their assignors, Goehring and the bank.  They purchased with at least constructive notice of the terms on which the property was held. Plaintiffs in error were then in possession.  That, as well as the defeasible deed, was notice to everybody that they were mortgagors in possession.

But, it is further contended that the instrument in question, whether it be considered an absolute. conveyance or merely a mortgage, is void, because the controlling consideration for which it was given was the illegal settlement of the indictments then pending against Alfred Pearce and others in the Quarter Sessions of Butler County.  That the admitted abandonment of those prosecutions was the moving consideration for the conveyance, is clearly if not conclusively shown by the testimony.  It appears that Pearce and others were charged with embezzlement, conspiracy, &c., and at June Sessions, 1877, bills of indictment were duly found, one of which contains four counts, respectively charging them, as officers of the Harmony Savings Bank, with embezzlement, fraudulently making false entries in the bank books, fraudulently making false bank statements, and fraudulently mutilating and

[Pearce *v.* Wilson.]

destroying accounts of the bank, with intent in each case to defraud the bank and its depositors. Negotiations looking to a settlement of these cases, as well as a civil case pending in Allegheny County, had been in progress for some time, but a final settlement was not fully agreed upon until immediately before the jury was empanelled to pass upon the indictments. In substance, the terms of settlement, so far as Pearce was concerned, were that he and his wife should execute and deliver to Goehring, the prosecutor, the conveyance above mentioned, and pay costs; in consideration of which Pearce should be released from all further liability to the bank, the prosecuting officer should decline to call any witnesses, and thus permit a verdict of acquittal to be rendered in the criminal cases. The necessary papers, already prepared, were to be delivered as soon as the verdict was thus taken. A jury was called, the acting district attorney stated he had no evidence to offer, and accordingly a verdict of not guilty was rendered in each case. Thereupon the remaining details of the compromise were carried out by the respective parties thereto. It is due to the acting district attorney to say, that in his testimony he also stated he informed the court that the parties had settled the cases, and no objection was interposed.

Defendants in error claim that the abandonment of the criminal prosecutions was not the only consideration for the mortgage; that the settlement of the civil action and release of the bank's claim against Pearce were important factors therein. Doubtless they were, but the mortgage was the price of the formal acquittals, as well as the release; neither the conveyance nor the consideration therefor is divisible. If any part of either is illegal the whole is void: Filson *v.* Himes, 5 Barr, 454; Chitty Cont. 992. It is not only an indictable offence to compound a felony, but as a general rule all contracts to abate or compromise criminal offences, of any class, are held void as against the policy of the law, because of their manifest tendency to subvert public justice. Formerly a distinction existed in this respect between felonies and misdemeanors, but it is no longer recognized, except in a few minor offences, the prosecution of which is matter of little or no public interest. In many jurisdictions the distinction between felonies and misdemeanors is abolished, and in those where it still exists it is regarded as artificial. There are many misdemeanors, the compounding of which militates far more against the public welfare than does the compounding of some felonies. It is more important, for instance, that conspiracies to murder and to rob, and all treasonable conspiracies, should be prosecuted by the state unswayed by private interest, and that private hands should be kept off such pro-

secutions, than that there should be this rigor manifested in all prosecutions for larceny. If an agreement to stifle a prosecution for larceny is invalid, there is no offence, touching the public as such, whose prosecution can be made a matter of private arrangement: Whart. Cont. §§ 483–84, and notes; 1 Story Eq. § 294; Bredin's Appeal, 11 Norris, 241; Riddle *v.* Hall, 3 Out. 116; Ormerod *v.* Dearman, 4 Id. 561. In Whitmore *v.* Farley (45 L. T., N. S. 99, cited in note to Whart. Cont., *supra*), it is said, "There are, no doubt, certain cases, as that of an assault, where the parties may compromise the offence without being guilty of an illegal act. But this does not apply to misdemeanors of a serious kind. Embezzlement is only a misdemeanor, but yet it is a criminal offence to compound a prosecution for embezzlement." In general, it is to the interest of the public that the suppression of a prosecution, whether for felony or misdemeanor, should not be made matter of private bargain; and hence the suppression or settlement of such prosecutions is contrary to public policy, and therefore void, except in certain cases for the settlement of which provision is made. This brings us to the main contention of defendants in error, viz., that the settlement of the prosecutions in question was authorized by the ninth section of our Criminal Procedure Act, which provides that: "In all cases where a person shall, on complaint of another, be bound by recognizance to appear . . . or shall be committed, or shall be indicted for assault and battery or other misdemeanor, to the injury and damage of the party complaining, and not charged to have been done with intent to commit a felony, or not being an infamous crime, and for which there shall also be a remedy by action, if the party complaining shall appear before the magistrate . . . or before the court in which the indictment may be, and acknowledge to have received satisfaction for such injury or damage, it shall be lawful for the magistrate, in his discretion, to discharge the recognizance . . . or in case of committal to discharge the prisoner, or for the court also where such proceeding has been returned to the court, in their discretion to order a *nolle prosequi* to be entered on the indictment, as the case may require, upon payment of costs; provided that this Act shall not extend to any assault and battery or other misdemeanor committed by or on any officer or minister of justice." This Act, it will be observed, does not apply to all misdemeanors. It is expressly restricted to such as are (1) to the injury and damage of the party complaining; (2) such as are not charged to have been done with intent to commit a felony; (3) such as are not infamous crimes; and (4) those for which there shall also be a remedy by action. These conditions must all concur. If

[Pearce v. Wilson.]

either be wanting, the Act does not apply. In the case before us, the party complaining was Henry Goehring. It nowhere appears that either of the misdemeanors compounded was done to his personal injury and damage. On the contrary, the embezzlement, fraudulently making false entries in the bank books, fraudulently mutilating and destroying accounts of the bank, &c., are charged to have been done with intent to defraud the bank and its depositors. The same is doubless true as to the indictment for conspiracy. We have not been furnished with a copy thereof, but defendants in error allege it was for conspiracy to defraud the bank and its depositors. It appears, therefore, that at least one of the conditions necessary to bring the misdemeanors within the provisions of the Act is wanting.

It is very evident, from the phraseology of the Act, that it was not intended to apply to misdemeanors of so grave a character as either of those in question, but only to such as are to the personal injury and damage of the prosecutor, and do not specially affect the public. The offences charged in the indictments are of a very high grade, much more detrimental to the common weal than many of the lower grades of felony. As officers of an incorporated bank, chartered in part, at least, for the public benefit, the parties accused occupied a *quasi* public position. The embezzlement of money entrusted to their care, by those occupying such positions, is a crime of much more public importance than ordinary larceny. While the fraudulent alteration of the books, mutilation and destruction of the accounts of such an institution, with intent to defraud it and those who have entrusted their money and securities to its care and keeping, is not technically forgery, it is quite as bad, and generally worse, in its far reaching consequences and injurious effects on the public interests. Ever and anon whole communities are startled and public confidence shaken to its very foundation by the commission of such crimes. To stifle their prosecution for a paltry pecuniary consideration is contrary to public policy, and a mere mockery of Justice in her own temple.

Judgment reversed, and a venire facias de novo awarded.