34 Cal.Rptr. 611

Appellate Department, Superior Court, Ventura

[Crim. A. No. 4570.   July 26, 1963.]

THE PEOPLE, Plaintiff and Appellant, v. JAMES ALLEN O'REAR, Defendant and Respondent.

( 927 )

928

Woodruff J. Deem, District Attorney, for Plaintiff and Appellant.

Kenneth G. Haymaker for Defendant and Respondent.

CHURCHILL, J.—The defendant was charged with a violation of Section 20002, subdivision (a), of the California Vehicle Code which provides as follows: "The driver of any vehicle involved in an accident resulting in damage to property shall immediately stop the vehicle at the scene of the accident and shall fulfill the requirements of section 20005 and any person failing to stop or to comply with said requirements under such circumstances is guilty of a misdemeanor and upon conviction thereof shall be punished by imprisonment in the county jail for not to exceed six months or by a fine of not to exceed five hundred dollars ($500) or by both. This subdivision shall not apply where the driver of a vehicle collides with any vehicle which is unattended."

Without notice to the district attorney, the court granted defendant's request for dismissal of the charges under the authority of Penal Code sections 1377 through 1379, upon the representation that satisfaction had been rendered to the person allegedly damaged, to wit, Timoteo P. Reyes. The plaintiff appeals upon several grounds, the most important of which is that the offense charged was not one which could be compromised or for which a dismissal could be authorized under the provisions of Penal Code section 1377, which provides as follows: "1377. When the person injured by an act constituting a misdemeanor has a remedy by a civil action, the offense may be compromised as provided in the next

section, except when it is committed: 1. By or upon an officer of justice, while in the execution of the duties of his office, 2. Riotously, 3. With an intent to commit a felony.''

No decisions by the appellate courts of this state are cited which are of any assistance.

The compounding of a crime was in itself a crime at common law. Ordinarily the crime was referred to as compounding a felony, and there appears to be some question whether at common law the offense was limited to the compounding of crimes which amounted to felonies, or whether it also included misdemeanors, except those which consisted largely of private injuries, or which were of a very ''low grade.'' In Burdick on Law of Crime, section 297, the author makes the following statement: ''It would seem from the old writers that, at common law, the offense is confined to the compounding of felonies, but it has been said that even at common law it is an indictable offense to compound a misdemeanor provided it is one that affects public justice and is dangerous to society, although the compounding of such misdemeanors as consist largely of private injuries, or are of very low grades, are not indictable.''

In the case of *State* v. *Carver*, 69 N.H. 216 [39 A. 973], the Supreme Court of New Hampshire cites a number of English cases and reaches the conclusion that at common law the compounding of a misdemeanor was a crime when the offense compounded was one against public justice and dangerous to society ... while those having largely the nature of private injuries, or of very ''low grade,'' were not indictable.

In *Pearce* v. *Wilson*, 111 Pa. 14 [2 A. 99], the Supreme Court of Pennsylvania, applying a statute very similar to Penal Code section 1377, held that it did not apply to the crime of embezzlement from a bank, which was a misdemeanor. The statute under certain circumstances authorized the compromise of a criminal charge ''for an assault and battery or other misdemeanor, to the injury and damage of the party complaining ... if the party complaining shall appear before the magistrate ... and acknowledge to have received satisfaction for such injury or damage.'' The party complaining appears to have been the trustee for the bank and the court rests its decision in part upon the rather technical argument that the trustee was not the person who had been injured or damaged, but rather it was the bank and its depositors who had been injured and damaged. But the court goes on to say, ''It is very evident from the phrase-

ology of the act that it was not intended to apply to misdemeanors of so grave a character as either of those in question, but only to such as are to the personal injury and damage of the prosecutor, and do not specially affect the public. The offenses charged in the indictments are of a very high grade; much more detrimental to the common weal than many of the lower grades of felony . . . To stifle their prosecution for a paltry pecuniary consideration is contrary to public policy, and a mere mockery of Justice in her own temple." The court therefore held that a contract given in furtherance of the agreement to compound a crime charge was illegal and unenforceable.

In Burdick on Law of Crime, section 192, the author makes the following statement: "192. It was said by Lord Chief Justice Tindal, in 1846, that it is 'very remarkable that but very little authority can be found for the principle that any compromise of a misdemeanor, or indeed of any public offenses, can be otherwise than illegal. It is said that in case of assault one may undertake not to prosecute on behalf of the public. It may be so, but we are not disposed to extend this any further.' " The case apparently involved an assault and battery in connection with a riot and the obstruction of a public officer.

Our code sections appear to have been based upon the New York Code of Criminal Procedure. It is stated in appellant's opening brief herein that the commissioners on practice and pleadings reported with respect to the equivalent sections as follows: "There are many cases which are public offenses, but which are in reality rather of a private than a public nature, and where a public interest is better promoted by checking than by encouraging criminal prosecution." The provisions actually adopted appear to be in line with the decision of Lord Chief Justice Tindal in the case above referred to, decided in 1846.

▮ With this historical background, it appears to us that the Legislature had no intention of authorizing the compounding and dismissal of every misdemeanor in which there was some incidental damage to a private citizen. ▮ We are of the opinion that the Legislature intended to include those misdemeanors in which by their very nature there is an overlapping of the civil remedy and the public remedy by way of prosecution for a crime. Thus in the case of an assault and battery since by its very definition a battery is a wilful and unlawful use of force or violence upon the person of

another (Pen. Code, § 242), the person injured would in almost every case have a civil action for damages. Similarily, since a theft is the unlawful taking of the property of another, the civil remedy of damages for conversion would almost always exist. Contrast the crime of excessive speed in an automobile. The crime may be committed without injury to the person or property of another. Or such injury may be the proximate result of the violation of the law which constitutes the crime. We do not believe that the Legislature intended to rest this important matter of public policy upon the happenstance that in any particular case a private citizen might or might not suffer personal injury or property damage. The right to compromise the offense of speeding in a vehicle should not depend upon this incidental matter.

▇ Neither in our opinion did the Legislature intend that the right to compromise or compound the offense of hit and run with property damage defined in the Vehicle Code section 20002, subdivision (a), should depend upon whether in a particular case the offender may be subject to a civil remedy for damages. He may or may not be negligent, and still commit the offense.

Our conclusion is also justified by the language of Penal Code section 1377 which authorizes such a dismissal only where a private citizen is "injured by an act constituting a misdemeanor." The gravamen of the offense defined by the Vehicle Code section 20002, subdivision (a), is the failure to stop and make the necessary report after the accident or damage has occurred. This omission is not one which causes injury to the private citizen. Hence, the private citizen is, under the circumstances, technically not a "person injured *by an act* constituting a misdemeanor" within the meaning of Penal Code section 1377. (Italics added.)

The People also assert as a ground for appeal that the lower court's action was in abuse of its discretion because no notice had been given to the district attorney, and the court acted without affording the district attorney an opportunity to be heard. Penal Code sections 1377 through 1379 do not contain any express requirement that the district attorney be given notice of the application authorized by those sections. In support of their contention the People cite the Code of Civil Procedure and other authorities dealing with civil procedure which do not appear to be conclusive. In view of our conclusion as to the proper interpretation of Penal Code

section 1377 we deem it unnecessary to decide the point.

The order of the lower court granting a dismissal of the action should be and it is reversed.

Berenson, P. J., and Henderson, J., concurred.