[No. A136371. First Dist., Div. Five. Mar. 11, 2014.]

THE PEOPLE, Plaintiff and Respondent, v.
JESUS CANELA, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

\*Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts I., II., IV., and V.

## COUNSEL

Jeffrey A. Glick, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Rene A. Chacon and Juliet B. Haley, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**JONES, P. J.**—A jury convicted appellant Jesus Canela of several crimes, including second degree robbery (Pen. Code, §§ 211, 212.5, subd. (c); count 1)[1] and evading a peace officer and driving in the direction opposite to traffic (Veh. Code, § 2800.4; count 4)). The jury found true gang and great bodily injury sentencing enhancements (§§ 186.22, subd. (b), 12022.7, subd. (a)) and the trial court sentenced appellant to state prison.

On appeal, appellant contends (1) the prosecutor used peremptory challenges to exclude African-Americans from the jury panel and the court erroneously denied his *Batson/Wheeler*[2] motion; (2) there was insufficient evidence to support the true findings on the gang enhancement (§ 186.22, subd. (b)) and the great bodily injury enhancement (§ 12022.7, subd. (a)); (3) the court erred by imposing a $41 "theft offense fine" (theft fine) pursuant to section 1202.5; and (4) he is entitled to one additional day of presentence credit.

In the published portion of the opinion, we conclude appellant personally inflicted great bodily injury "in the commission" of count 4 within the meaning of section 12022.7, subdivision (a). In the unpublished portion of the opinion, we conclude the court did not err by denying appellant's *Batson/Wheeler* motion and substantial evidence supports the section 186.22 gang enhancement. We also conclude the amount of the section 1202.5 theft fine must be reduced and appellant is entitled to 957 days of presentence credit.

We modify the judgment to (1) impose a theft fine of $10 and penalty assessments on that fine in the amount of $26 pursuant to section 1202.5 and

---

[1] Unless otherwise noted, all further statutory references are to the Penal Code.

[2] *Batson v. Kentucky* (1986) 476 U.S. 79, 95–96 [90 L.Ed.2d 69, 106 S.Ct. 1712] (*Batson*); *People v. Wheeler* (1978) 22 Cal.3d 258, 276–277 [148 Cal.Rptr. 890, 583 P.2d 748] (*Wheeler*), disapproved on another ground in *Johnson v. California* (2005) 545 U.S. 162, 166–168 [162 L.Ed.2d 129, 125 S.Ct. 2410].

(2) award appellant 957 days of presentence credit. We direct the trial court to prepare an amended abstract of judgment and to forward a certified copy to the Department of Corrections and Rehabilitation. In all other respects, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

We provide an overview of the facts here. We provide additional factual and procedural details as germane to the discussion of appellant's specific claims.

*The Crimes*

On May 8, 2010, I.B. walked by a parked Buick LeSabre. A man—later identified as appellant—was in the driver's seat. Another man—later identified as Francisco Chavez—was in the passenger seat. Chavez asked to borrow I.B.'s phone; I.B. handed the phone to Chavez, who made a call while I.B. walked around to the driver's side of the car. When Chavez finished the call, I.B. asked Chavez to return the phone. Chavez asked to use the phone again and I.B. did not respond.

Chavez pulled out a gun, leaned across appellant, and pointed it at I.B. Chavez told I.B. to give him "whatever" I.B. had. I.B. ran. Appellant got out of the car and chased him, catching him, and grabbing I.B.'s sweat shirt. I.B. pulled himself free of the sweat shirt, leaving it in appellant's hands, and fled. Without saying anything, appellant returned to his car and drove away. I.B. called the police from a nearby store.

Shortly thereafter, Richmond Police Officer Byron Macrenato responded to a call from dispatch that a person had been robbed at gunpoint and that the robbers' vehicle was a blue, older-model Buick occupied by two Hispanic men in their 20's wearing dark-colored tops and hats, and armed with a semiautomatic handgun. Officer Macrenato saw a 90's "blue-purplish Buick occupied by two Hispanic males wearing black shirts and black hats." The car was preparing to turn left. Officer Macrenato made eye contact with appellant, who looked in Officer Macrenato's direction and continued northbound instead of turning. Officer Macrenato followed the vehicle without activating his lights and sirens and called for backup.

Shortly thereafter, two other Richmond police officers, Phil Sanchez and Ian Reid, arrived in separate patrol cars with their lights and sirens activated. At that point, appellant "immediately took off at a high rate of speed," and the three officers followed with their lights and sirens activated. Appellant drove "at least 40 miles an hour" in a 25 mile-per-hour zone. Appellant ran a

stop sign, turned left, and ran three red lights. Then he made a left turn through a red light without slowing down and hit pedestrian M. Broadway, who was pushing a shopping cart. The force of the collision knocked Broadway about 25 feet into a parking lot, and sent some of his possessions flying. The impact was so strong that Broadway "went airborne" like a rag doll tossed into the air. Broadway—who was lapsing in and out of consciousness, and who appeared to have severe head and leg injuries—was taken to the hospital, where he underwent surgery for a spinal fracture.

Appellant's car skidded. The rear wheels landed on the sidewalk and the rear windshield shattered. Appellant drove back onto the street and slowed down; Chavez jumped out of the car and ran. Officers Macrenato and Reid followed appellant, who continued to speed, made several more turns, and ran two stop signs. Appellant also drove for some distance in the wrong direction and into oncoming traffic before running another red light and turning left. After several more blocks, appellant jumped out of his car and ran. Officer Macrenato pursued appellant on foot, pulled out his gun, and ordered appellant to stop. Appellant did not comply. Eventually, Officers Reid and Macrenato subdued and arrested appellant, who was "kicking and kicking." Law enforcement officers found I.B.'s sweat shirt and phone in appellant's car.

*Verdict and Sentencing*

The jury convicted appellant of second degree robbery (§§ 211, 212.5, subd. (c); count 1), evading a peace officer and causing serious bodily injury (Veh. Code, §§ 2800.1, 2800.3; count 2), evading a peace officer and driving recklessly (Veh. Code, § 2800.2, subd. (a); count 3), evading a peace officer and driving in the direction opposite to traffic (Veh. Code, § 2800.4; count 4), gang participation (§ 186.22, subd. (a); count 5), resisting an officer (§ 148, subd. (a)(1); count 6) and leaving the scene of an injury accident (Veh. Code, § 20001, subd. (a); count 7). With respect to counts 1 through 4, the jury found true the enhancement that appellant personally inflicted great bodily injury (§§ 12022.7, subd. (a), 969f). With respect to counts 1 and 2, the jury found true a gang enhancement (§ 186.22, subd. (b)(1)).

The court granted a new trial on the gang enhancement and struck the great bodily injury enhancement with respect to count 2 (evading a police officer and causing serious bodily injury). The court found the prior prison allegation true and sentenced appellant to a total prison term of 18 years eight months calculated as follows: a three-year midterm for count 1, plus a consecutive term of three years for the great bodily injury enhancement and a term of 10 years for the gang enhancement; a consecutive term of eight months for reckless driving (count 3); a consecutive term of one year for leaving the

scene of an accident (count 7); and a consecutive term of one year was imposed for the prison prior enhancement. The court imposed but stayed sentences on the remaining felony charges (counts 2, 3, 4, and 5) and their associated enhancements pursuant to section 654, including the great bodily injury enhancement attached to count 4.

The court also imposed a $41 theft fine pursuant to section 1202.5 and granted appellant 956 days of presentence credit, comprised of 831 days in custody and 125 days' conduct credits.

## DISCUSSION

### I., II.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### III.

*Appellant Personally Inflicted Great Bodily Injury "in the Commission" of Count 4 Within the Meaning of Section 12022.7, Subdivision (a)*

■ In count 4, the jury convicted appellant of violating Vehicle Code section 2800.4, and found he personally inflicted great bodily injury while committing the offense pursuant to section 12022.7, subdivision (a). Vehicle Code section 2800.4 makes it a crime to evade a police officer and, while doing so, drive in the wrong direction on a highway. (Sen. Bill No. 1735 (2005–2006 Reg. Sess.) § 1.) It provides in relevant part, "Whenever a person willfully flees or attempts to elude a pursuing peace officer in violation of [Vehicle Code] [s]ection 2800.1, and the person operating the pursued vehicle willfully drives that vehicle on a highway in a direction opposite to that in which the traffic lawfully moves upon that highway," the person may be punished by imprisonment in county jail or prison.[7] (Veh. Code, § 2800.4;

---

*See footnote, *ante*, page 703.

[7] Vehicle Code section 2800.1 defines officer evasion as follows: "Any person who, while operating a motor vehicle and with the intent to evade, willfully flees or otherwise attempts to elude a pursuing peace officer's motor vehicle, is guilty of a misdemeanor punishable by imprisonment in a county jail for not more than one year if all of the following conditions exist: [¶] (1) The peace officer's motor vehicle is exhibiting at least one lighted red lamp visible from the front and the person either sees or reasonably should have seen the lamp. [¶] (2) The peace officer's motor vehicle is sounding a siren as may be reasonably necessary. [¶] (3) The peace officer's motor vehicle is distinctively marked. [¶] (4) The peace officer's motor vehicle is operated by a peace officer, . . . and that peace officer is wearing a distinctive uniform."

see 2 Witkin & Epstein, Cal. Criminal Law (4th ed. 2012) Crimes Against Public Peace and Welfare, § 329, p. 1088.) Section 12022.7, subdivision (a) provides a sentencing enhancement for "[a]ny person who personally inflicts great bodily injury on any person other than an accomplice in the commission of a felony or attempted felony."

Appellant contends the great bodily injury enhancement must be stricken because he inflicted the injury on pedestrian Broadway *before* he drove in the direction opposite to traffic in violation of Vehicle Code section 2800.4. According to appellant, the crime prohibited by Vehicle Code section 2800.4 does not begin until the defendant drives in the wrong direction. We are aware of no published cases interpreting Penal Code section 12022.7 and Vehicle Code section 2800.4 in this context. Because section 12022.7 "is dependent upon and necessarily attached to its underlying felony" (*People v. Mustafaa* (1994) 22 Cal.App.4th 1305, 1311 [28 Cal.Rptr.2d 172]) the question is whether appellant was engaged "in the commission of a felony or attempted felony" when he caused Broadway's injuries (§ 12022.7, subd. (a)). The answer is yes.

■ First, we "examine the statutory language, giving it a plain and commonsense meaning." (*People v. Fandinola* (2013) 221 Cal.App.4th 1415, 1421 [165 Cal.Rptr.3d 383].) ■ Vehicle Code section 2800.4 provides that "[w]*henever* a person willfully flees or attempts to elude a pursuing peace officer in violation of [Vehicle Code] [s]ection 2800.1" and "drives that vehicle on a highway in a direction opposite to . . . traffic" the person has committed a misdemeanor or felony. (Italics added.) Although Vehicle Code section 2800.4 requires driving in the direction opposite to traffic at some point during the flight, the wrong-way driving need not be coextensive with the entire duration of the flight; in other words, the element of willfully driving in the wrong direction may occur any time during the act of willfully fleeing a pursuing peace officer. Appellant cannot avoid the enhancement by attempting to temporally segment his willful evasion into the crime of violating Vehicle Code sections 2800.1 and 2800.4. Here, appellant injured Broadway while fleeing from a pursuing officer and/or attempting to evade that officer; during that same evasion appellant later drove in the wrong direction. That appellant had not completed the crime prohibited by Vehicle Code section 2800.4 by driving in the direction opposite to traffic when he struck Broadway does not alter our conclusion. ■ Penal Code section 12022.7 applies because appellant was engaged in the commission of the felony when he inflicted the great bodily injury. (See *People v. Gomez* (2008) 43 Cal.4th 249, 254 [74 Cal.Rptr.3d 123, 179 P.3d 917] [in a continuing offense "no artificial parsing is required as to the precise moment or order in which the elements are satisfied"]; see also *People v. Mixon* (1990) 225 Cal.App.3d 1471, 1488 [275 Cal.Rptr. 817] [§ 12022.7 applied where victim sustained injuries after the burglary].)

Our conclusion finds support in cases broadly construing identical language in section 12022.3, subdivision (a), which imposes a sentencing enhancement for the use of a deadly weapon "in the commission" of specified sex crimes. (See *People v. Jones* (2001) 25 Cal.4th 98, 107–108 [104 Cal.Rptr.2d 753, 18 P.3d 674] [use of a weapon after a series of sex crimes can be "found to have occurred 'in the commission of' " the crimes under § 12022.3, subd. (a)]; *People v. Masbruch* (1996) 13 Cal.4th 1001, 1006 [55 Cal.Rptr.2d 760, 920 P.2d 705] [§ 12022.3, subd. (a) enhancement upheld where the defendant displayed the handgun before the rape]; *People v. Castro* (1994) 27 Cal.App.4th 578, 586 [32 Cal.Rptr.2d 529] [broadly construing phrase " 'in the commission of' " in statutes providing enhancement for use of a weapon in the commission of a crime].) Appellant has not articulated a persuasive reason why we should interpret "in the commission of" in section 12022.7, subdivision (a) narrowly where numerous courts have given identical language in similar statutes an " 'expansive, not a tailored meaning.' " (*People v. Calles* (2012) 209 Cal.App.4th 1200, 1222 [147 Cal.Rptr.3d 673], quoting *People v. Frausto* (2009) 180 Cal.App.4th 890, 900 [103 Cal.Rptr.3d 231] and distinguishing *People v. Valdez* (2010) 189 Cal.App.4th 82 [116 Cal.Rptr.3d 670] (*Valdez*).)

Appellant relies on *Valdez*, which considered when a great bodily injury enhancement may attach to the crime of fleeing the scene of an injury accident in violation of Vehicle Code section 20001, subdivision (a). (*Valdez, supra*, 189 Cal.App.4th at p. 84.) The *Valdez* court determined the "criminal act" prohibited by Vehicle Code section 20001, subdivision (a) is defendant's flight from the scene of the accident and that the injuries sustained in the car accident preceding the defendant's flight "were not inflicted *in the commission of* a felony or attempted felony based upon defendant's subsequent flight." (*Valdez, supra*, 189 Cal.App.4th at p. 90.) As the *Valdez* court explained, "the purpose of section 20001, subdivision (a) is to punish 'not the "hitting" but the "running." ' [Citation.] The injuries were 'caused by acts which occurred prior to the criminal act, not as a result of the criminal act.' [Citation.] The fact that defendant *subsequently* fled does not retroactively alter the character of the accident from noncriminal to criminal." (*Id.* at p. 90, fn. omitted.) *Valdez* concerned a different Vehicle Code statute and we decline to apply its reasoning here. In *Valdez*, the enhancement could not be attached to the crime of fleeing the accident scene prohibited by Vehicle Code section 20001, because the injury occurred *before* the flight; here, and in contrast to *Valdez*, the injury occurred *during* the flight that is the subject of Vehicle Code section 2800.4.

We conclude the evidence establishes appellant inflicted great bodily injury "in the commission" of count 4 within the meaning of section 12022.7, subdivision (a).

IV., V.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The judgment is modified to (1) impose a theft fine of $10 (Pen. Code, § 1202.5, subd. (a)) and penalty assessments on that fine in the amount of $26, and (2) award appellant 957 days of presentence custody credits, consisting of 833 days of actual custody plus 124 days of conduct credits pursuant to Penal Code section 2933.1. The trial court is directed to prepare an amended abstract of judgment and to forward a certified copy of the amended abstract of judgment to the Department of Corrections and Rehabilitation. In all other respects, the judgment is affirmed.

Needham, J., and Bruiniers, J., concurred.

A petition for a rehearing was denied April 2, 2014, and the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied July 16, 2014, S218474.

---

*See footnote, *ante,* page 703.