Filed 2/28/19

**CERTIFIED FOR PUBLICATION**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>LOURDES ORTIZ DIMACALI,<br><br>    Defendant and Respondent. | D074680<br><br><br><br>(Super. Ct. Nos.<br> CA274429, M226140) |

APPEAL from an order of the Superior Court of San Diego County, Margo Lewis Hoy, Judge.  Reversed and remanded with directions.

Mara W. Elliott, City Attorney, John C. Hemmerling, Assistant City Attorney, Michael L. Ficken, Deputy City Attorney for Plaintiff and Appellant.

Angela Bartosik, Chief Deputy, Primary Public Defender, Peter Tran and Euketa Oliver, Deputy Public Defenders for Defendant and Respondent.

California law allows the civil compromise of certain offenses involving a person "injured by an act constituting a misdemeanor" who "has a remedy by a civil action" so long as the criminal defendant compensates the injured person and pays all costs incurred. (Pen. Code,[1] §§ 1377, 1378; see *People v. Gokcek* (2006) 138 Cal.App.4th Supp. 8, 11.) This appeal presents the question of whether a misdemeanor charge of leaving the scene of an accident causing only property damage in violation of Vehicle Code section 20002, subdivision (a) (commonly referred to as hit-and-run; see *California v. Byers* (1971) 402 U.S. 424; *People v. Carbajal* (1995) 10 Cal.4th 1114, 1118) is subject to disposition by such a civil compromise. The People contend such a violation cannot be compromised as a matter of law; that the damages must flow from the criminal conduct and *People v. Martinez* (2017) 2 Cal.5th 1093 (*Martinez*) confirms the crime is not the accident but the failure to stop and provide information, which cannot in any scenario cause the property damage suffered by the victim of the misdemeanor offense. They urge us to reject authority to the contrary—*People v. Tischman* (1995) 35 Cal.App.4th 174 (*Tischman*)—as flawed and no longer good law. The nature of the hit-and-run offense at issue and a plain reading of the civil compromise statutes compels us to agree. We reverse.

FACTUAL AND PROCEDURAL BACKGROUND

The People filed a complaint charging Lourdes Ortiz Dimacali with a single count of misdemeanor hit-and-run driving after Dimacali was involved in an August 2016

---

[1]    Undesignated statutory references are to the Penal Code.

2

incident with M.T. The People alleged Dimacali was the driver of a vehicle involved in an accident resulting in property damage, but failed to locate and notify M.T. or appropriate authorities in violation of Vehicle Code section 20002, subdivision (a). Dimacali pleaded not guilty to the offense.

Thereafter, Dimacali moved to stay prosecution and for discharge and dismissal of her case under sections 1377 and 1378, based in part on a declaration from M.T. in which M.T. stated she had sustained $1,166.78 in damages as a result of the incident, Dimacali had reimbursed her that amount, and M.T. did not want Dimacali prosecuted. Dimacali argued that hit-and-run accidents qualified for compromise under *Tischman*, *supra*, 35 Cal.App.4th 174 because her criminal offense shared a common element—monetary damage—with the civil cause of action.

The People opposed the motion on three grounds. They argued (1) the hit-and-run offense did not qualify for civil compromise because the California Supreme Court in *Martinez, supra*, 2 Cal.5th 1093 held the act constituting the Vehicle Code section 20002, subdivision (a) offense was fleeing the scene, not the collision, implicitly overruling *Tischman*; (2) Dimacali did not meet the statutory requirements for civil compromise because M.T. was not present before the court to acknowledge satisfaction; and (3) the public interest was not vindicated by a civil compromise so as to permit the court to exercise its discretion to grant Dimacali's requested relief. Following a hearing on the matter, the superior court granted Dimacali's motion and dismissed her case on condition she pay court fees and costs.

The People appealed to the San Diego Superior Court's appellate division.

3

(§ 1466, subd. (a)(2).) They argued a violation of Vehicle Code section 20002, subdivision (a) could not be civilly compromised as a matter of law, repeating the arguments that the collision was not an element of the crime and thus damages did not flow from the criminal act, but rather under *Martinez*, *supra*, 2 Cal.5th 1093 the gravamen of the crime was the flight. They argued *Tischman*'s reasoning was flawed and contrary to *Martinez*. The appellate division rejected these arguments and affirmed the superior court's order. We granted the People's request to have the matter transferred to this court for review.[2]

## DISCUSSION

### I. *Standard of Review*

The relevant facts—that Dimacali was charged with a violation of Vehicle Code section 20002, subdivision (a) and thereafter satisfied the victim's damages—are not in dispute. Under the circumstances, whether her misdemeanor offense qualifies for civil compromise is a question of statutory interpretation that we review independently. (See *Lopez v. Sony Electronics, Inc.* (2018) 5 Cal.5th 627, 633 [cases posing a pure question of statutory interpretation are subject to independent review]; *Poole v. Orange County Fire*

---

[2] "When a case is certified for transfer to an appellate court to settle important and recurring questions of law, the appellate court has the same power as the superior court's appellate division to review any matter and make orders. [Citation.] Thus, we review this matter as if the parties directly appealed to us following the trial court's ruling." (*People v. Randolph* (2018) 28 Cal.App.5th 602, 610, citing *People v. Linn* (2015) 241 Cal.App.4th 46, 56.)

*Authority* (2015) 61 Cal.4th 1378, 1384 [court reviews de novo application of statute to undisputed facts]; *Huntington Continental Townhouse Assn., Inc. v Miner* (2014) 230 Cal.App.4th 590, 598 [general standards of appellate review—including de novo review of issues of statutory interpretation—apply to appeals transferred from the superior court appellate division for decision in the Court of Appeal].)

We apply settled standards for construing a statute:  " 'Our fundamental task is to determine the Legislature's intent and give effect to the law's purpose.  [Citation.]  We begin by examining the statute's words " 'because they generally provide the most reliable indicator of legislative intent.'  [Citation.]  If the statutory language is clear and unambiguous our inquiry ends." '  [Citation.]  In that case, the plain meaning of the statute is controlling, and ' "resort to extrinsic sources to determine the Legislature's intent is unnecessary." ' "  (*Lopez v. Sony Electronics*, *supra*, 5 Cal.5th at pp. 633-634.)

II.  *Nature of Vehicle Code Section 20002 "Hit-and-Run" Offense*

We begin by examining the nature of the offense committed by a violation of Vehicle Code section 20002.  The statute makes it a misdemeanor if a driver of a vehicle in an accident resulting in damage to property fails to stop and give specified information to the owner of the other vehicle.  (See *People v. Holford* (1965) 63 Cal.2d 74, 80, fn. 3.)[3]

---

3    Vehicle Code section 20002, subdivision (a) provides:  "The driver of any vehicle involved in an accident resulting only in damage to any property, including vehicles, shall immediately stop the vehicle at the nearest location that will not impede traffic or otherwise jeopardize the safety of other motorists.  Moving the vehicle in accordance with this subdivision does not affect the question of fault.  The driver shall also

The California Supreme Court has characterized the crime as "leaving the scene of the accident." (*People v. Carbajal*, *supra*, 10 Cal.4th at p. 1124; see also *Martinez*, *supra*, 2 Cal.5th at p. 1102 [describing Vehicle Code section 20001 offense as " 'more accurately described as fleeing the scene of an injury accident' "].) Vehicle Code section 20002 was " 'enacted by the Legislature to protect owners of unattended vehicles from financial loss caused by irresponsible persons who damage such vehicles and attempt to escape liability by departing from the scene of the accident without leaving any identification or evidence by which to trace them.' " (*Carbajal*, at pp. 1124-1125.) The statute is aimed at "all persons who drive automobiles in California" and thus is

immediately do either of the following: [¶] (1) Locate and notify the owner or person in charge of that property of the name and address of the driver and owner of the vehicle involved and, upon locating the driver of any other vehicle involved or the owner or person in charge of any damaged property, upon being requested, present his or her driver's license, and vehicle registration, to the other driver, property owner, or person in charge of that property. The information presented shall include the current residence address of the driver and of the registered owner. If the registered owner of an involved vehicle is present at the scene, he or she shall also, upon request, present his or her driver's license information, if available, or other valid identification to the other involved parties. [¶] (2) Leave in a conspicuous place on the vehicle or other property damaged a written notice giving the name and address of the driver and of the owner of the vehicle involved and a statement of the circumstances thereof and shall without unnecessary delay notify the police department of the city wherein the collision occurred or, if the collision occurred in unincorporated territory, the local headquarters of the Department of the California Highway Patrol." (Veh. Code, § 20002, subd. (a)(1), (2).) The court in *People v. Holford* stated: "Neither knowledge of injury nor knowledge of the seriousness of the nature of the accident is required for a conviction under Vehicle Code section 20002 . . . ." (*People v. Holford*, *supra*, 63 Cal.2d at p. 80, fn. 3.) *Holford* must be read to refer to personal injury, as the court was distinguishing the Vehicle Code section 20002 offense with that addressed in Vehicle Code section 20001, which penalizes a driver of a vehicle "involved in an accident resulting in injury [or death] to a person, other than himself or herself" who fails to stop and perform certain legal duties. (Veh. Code, §§ 20001, 20003, 20004.)

6

" 'directed at the public at large.' " (*California v. Byers*, *supra*, 402 U.S. at p. 430.)  It was "not intended to facilitate criminal convictions but to promote the satisfaction of civil liabilities arising from automobile accidents."  (*Ibid*.)

"The essential elements of a violation of [Vehicle Code] section 20002, subdivision (a) are that the defendant: (1) knew he or she was involved in an accident; (2) knew damage resulted from the accident; and (3) knowingly and willfully left the scene of the accident (4) without giving the required information to the other driver(s)." (*People v. Carbajal*, *supra*, 10 Cal.4th at p. 1123, fn. 10.)  " 'The regulatory purpose of [Vehicle Code] section 20002, subdivision (a) is to provide the owners of property damaged in traffic accidents with the information they need to pursue their civil remedies.' [Citation.]  By leaving the scene of the accident, the fleeing driver deprives the nonfleeing driver of his or her right to have responsibility for the accident adjudicated in an orderly way according to the rules of law.  This commonly entails a real, economic loss, not just an abstract affront.  Among other things, the crime imposes on the nonfleeing driver the additional costs of locating the fleeing driver and, in some cases, the total costs of the accident.  'The cost of a "hit and run" violation is paid for by *every* law-abiding driver in the form of increased insurance premiums.  The crime with which the defendant is charged is complete upon the "running" whether or not his conduct caused substantial or minimal (or indeed any) damage or injury; it is the *running* which offends public policy.' "  (*Id*. at p. 1124, citing in part *People v. McWhinney* (1988) 206 Cal.App.3d Supp. 8, 12 (*McWhinney*).)

Indeed, a person's act of driving at the time of an accident is "conduct that is not in itself necessarily criminal . . . ." (*People v. Carbajal*, *supra*, 10 Cal.4th at p. 1123.) In *California v. Byers*, a plurality of the United States Supreme Court pointed out with respect to Vehicle Code section 20002's reporting requirement that "it is not a criminal offense under California law to be a driver 'involved in an accident.' An accident may be the fault of others; it may occur without any driver having been at fault. . . . So far as any available information instructs us, most accidents occur without creating criminal liability even if one or both of the drivers are guilty of negligence as a matter of tort law." (*California v. Byers*, *supra*, 402 U.S. at p. 431.)[4]

In 2017, the California Supreme Court in *Martinez* echoed *Carbajal's* and *Byers's* statements about the conduct criminalized by hit-and-run offenses, in reviewing an award of direct restitution to a victim of a hit and run involving personal injury (Veh. Code, § 20001, subd. (a)). *Martinez* addressed whether the restitution award was authorized under statutes requiring a convicted felon to pay restitution for economic loss the victim incurred "as the result of the commission of a crime" (§ 1202.4, subd. (a)(1)) or "as the

---

4    The plurality held that Vehicle Code section 20002, subdivision (a)'s requirement that a driver stop and give out his or her name and address did not violate the Fifth Amendment's privilege against self-incrimination. (*California v. Byers*, *supra*, 402 U.S. at p. 425.) Finding the primary purpose of the statute to be regulatory in nature (i.e., to promote satisfaction of civil liabilities arising from automobile accidents and implement state police power to regulate use of motor vehicles) and without a substantial risk of self-incrimination (requiring only self-reporting of essentially neutral information that is itself not incriminating but may be a link in the chain of evidence leading to prosecution), the Court held that the required stop and disclosure of a person's name and address was not sufficiently incriminating or testimonial to implicate the Fifth Amendment's protections. (*Byers*, at pp. 428-433.)

result of the defendant's criminal conduct" (*id*., § 1202.4, subd. (f)(3)). (*Martinez*, *supra*, 2 Cal.5th at pp. 1097-1098.) Emphasizing that courts had properly characterized the offense as fleeing the scene of an injury accident (*id*. at p. 1102), the court explained that " ' "the act made criminal" ' under the statute ' "is not the 'hitting' but the 'running.' " ' [Citation.] ' "The legislative purpose of [Vehicle Code] sections 20001 and 20003 is to prevent the driver of a vehicle involved in an injury-causing accident from leaving injured persons in distress and danger for want of medical care and from attempting to avoid possible civil or criminal liability for the accident by failing to identify oneself." ' [Citation.] [¶] Under Vehicle Code section 20001[, subdivision] (a), '[t]he occurrence of an injury accident is a condition precedent' to the imposition of a duty to stop, provide identification, and render aid—'but [it] is not an element of the crime' in the sense that it constitutes part of the conduct forbidden by the statute. [Citation.] Nor is any degree of fault required for conviction; a defendant who flees the scene of an injury accident has committed a crime even if the accident was solely the result of the victim's own negligence." (*Id*. at pp. 1102-1103, quoting *Corenbaum v. Lampkin* (2013) 215 Cal.App.4th 1308, 1340.)

The Supreme Court in *Martinez* rejected the direct restitution award based on this "long-settled understanding of the crime made punishable by Vehicle Code section 20001[subdivision] (a)" (*Martinez*, *supra*, 2 Cal.5th at p. 1103) as well as a "straightforward reading of the statutory text" (*id*. at p. 1105) of section 1202.4. It stated: "By its terms, section 1202.4 authorizes—indeed, requires—courts in Vehicle Code section 20001 cases to award direct victim restitution for losses resulting from the

9

defendant's crime: that is, flight from the scene of the accident without identifying himself or herself, rendering aid, or otherwise fulfilling the statutory requirements. . . . Section 1202.4 does not, however, permit courts to order direct victim restitution for losses that occur as a result of an underlying accident that involves no criminal wrongdoing." (*Id*. at p. 1107, see also *id*. at p. 1103 ["Restitution for losses incurred 'as a result of the commission of a crime' includes losses incurred as a result of the defendant's unlawful flight from the scene of the accident in which he or she was involved, but not losses solely as a result of the accident itself"].) It rejected the People's various policy-based arguments that would give the sentencing court discretion to determine fault at the restitution hearing, stating they "cannot be squared with the plain language of section 1202.4," which "refers to losses incurred 'as a result of the commission of a crime,' not as the result of attendant facts or circumstances the prosecution must prove in order to obtain a conviction. Involvement in an accident is precisely such a circumstance; it forms no part of the conduct proscribed by Vehicle Code section 20001[, subdivision] (a), but instead describes an event that gives rise to the statutory duty to stop, provide identification, and render aid." (*Id*. at p. 1104.) *Martinez* thus reiterates long standing case law "defin[ing] the conduct criminalized in a hit-and-run with injury" as the flight. (*People v. Nuno* (2018) 26 Cal.App.5th 43, 52; see also *People v. Valdez* (2010) 189 Cal.App.4th 82, 87-90 [summarizing cases, and reversing great bodily injury enhancement finding as to defendant committing hit-and-run with injury because defendant did not inflict such injury in fleeing the scene]; *Corenbaum v. Lampkin*, *supra*, 215 Cal.App.4th at p. 1340 [citing cases, affirming denial of attorney fees authorized for

a prevailing plaintiff in an action for damages "based upon that defendant's commission of a felony offense for which that defendant has been convicted" (Code Civ. Proc., § 1021.4) because plaintiff's action for injuries suffered in an accident was not "based upon" the defendant's criminal conduct of fleeing the scene in violation of Vehicle Code section 20001, subdivision (b)].) And this court has not limited *Martinez*'s holding in that respect to the direct restitution context. In *Nuno*, a panel of this court applied *Martinez* to hold that a defendant did not use a deadly weapon (a car) on a person "in connection with the perpetration" of his hit-and-run offense so as to be presumptively ineligible for probation because he did not use the vehicle as a deadly weapon in fleeing the scene. (*Nuno*, 26 Cal.App.5th at pp. 47, 50-52.)

III. *The Civil Compromise Statutes and Application to Misdemeanor Hit and Run*

Section 1377 provides in part: "When the person injured by an act constituting a misdemeanor has a remedy by a civil action, the offense may be compromised, as provided in Section 1378 . . . ."[5] Section 1378 states: "If the person injured appears before the court in which the action is pending at any time before trial, and acknowledges that he has received satisfaction for the injury, the court may, in its discretion, on

---

[5] Section 1377 excepts from civil compromise offenses that are "committed as follows: [¶] (a) By or upon an officer of justice, while in the execution of the duties of his or her office. [¶] (b) Riotously. [¶] (c) With an intent to commit a felony. [¶] (d) In violation of any court order as described in Section 273.6 or 273.65. [¶] (e) By or upon any family or household member, or upon any person when the violation involves any person described in Section 6211 of the Family Code or subdivision (b) of Section 13700 of this code. [¶] (f) Upon an elder, in violation of Section 368 of this code or Section 15656 of the Welfare and Institutions Code. [¶] (g) Upon a child, as described in Section 647.6 or 11165.6."

11

payment of the costs incurred, order all proceedings to be stayed upon the prosecution, and the defendant to be discharged therefrom; but in such case the reasons for the order must be set forth therein, and entered on the minutes. The order is a bar to another prosecution for the same offense." Section 1379 provides: "No public offense can be compromised, nor can any proceeding or prosecution for the punishment thereof upon a compromise be stayed, except as provided in this Chapter."

The civil compromise statutes "provide for the limited circumstances where a person, injured by a misdemeanant, can assert a civil claim. [Citation.] If the injured person in such an instance appears in criminal proceedings and acknowledges he has received satisfaction for his injuries, the court may stay such proceedings and discharge the defendant in accordance with procedures set out in section 1378." (*Hoines v. Barney's Club, Inc.* (1980) 28 Cal.3d 603, 611.)

The background and underlying purpose of these statutes was addressed early on by several appellate departments. (See *People v. O'Rear* (1963) 220 Cal.App.2d Supp. 927 (*O'Rear*); *People v. Moulton* (1982) 131 Cal.App.3d Supp. 10; *People v. Stephen* (1986) 182 Cal.App.3d Supp. 14.) *O'Rear* and *Moulton* traced the origin of California's civil compromise statutes to a New York statute whose underlying policy was explained by that state's Commissioners: " 'There are many cases which are public offenses, but which are in reality rather of a private than a public nature, and where a public interest is better promoted by checking than by encouraging criminal prosecution.' " (*O'Rear*, at p. Supp. 930; see *Moulton*, at pp. Supp. 17-18, 30.) The Commissioners included in this category libels, as well as simple assaults and batteries. (*Moulton*, at p. Supp. 20.)

12

*O'Rear* dealt specifically with a violation of Vehicle Code section 20002, subdivision (a). There, the People appealed after the court dismissed the case of a defendant charged with misdemeanor hit and run who had satisfied the victim's damages and sought civil compromise. (*O'Rear*, *supra*, 220 Cal.App.2d at p. Supp. 928.) Reviewing the history of California's civil compromise statutes, the appellate department in *O'Rear* expressed its view that the California Legislature intended to subject to civil compromise only "those misdemeanors in which by their very nature there is an overlapping of the civil remedy and the public remedy by way of prosecution for a crime" and where the victim "would in almost every case have a civil action for damages" as in the commission of an assault or theft. (*Id*. at pp. Supp. 930-931.) The court distinguished crimes such as speeding, which may or may not be committed without injury. (*Id*. at p. Supp. 931.) The court held the latter types of crimes, including the hit-and-run offense—would not qualify: "We do not believe that the Legislature intended to rest this important matter of public policy upon the happenstance that in any particular case a private citizen might or might not suffer personal injury or property damage. The right to compromise the offense of speeding in a vehicle should not depend upon this incidental matter. Neither in our opinion did the Legislature intend that the right to compromise . . . the offense of hit and run with property damage defined in the Vehicle Code Section 20002[, subdivision] (a), should depend upon whether in a particular case the offender may be subject to a civil remedy for damages. He may or may not be negligent, and still commit the offense." (*Ibid*.)

The court in *O'Rear* additionally found section 1377's language precluded civil compromise of the hit-and-run offense: "[S]ection 1377 . . . authorizes such a dismissal only where a private citizen is 'injured by an act constituting a misdemeanor.' The gravamen of the offense defined by the Vehicle Code section 20002[, subdivision] (a) is the failure to stop and make the necessary report after the accident or damage has occurred. This omission is not one which causes injury to the private citizen. Hence, the private citizen is, under the circumstances, technically not a 'person injured *by an act* constituting a misdemeanor' within the meaning of . . . section 1377." (*O'Rear*, *supra*, 220 Cal.App.2d at p. Supp. 931.)

In *People v. Moulton*, *supra*, 131 Cal.App.3d Supp. 10, the appellate department of the Los Angeles County Superior Court assessed the propriety of a dismissal of a grand theft charge under the civil compromise statutes. (*Id*. at p. Supp. 14.) The question on appeal was whether the offense—which was punishable alternately as a felony or misdemeanor—was excluded from civil compromise as committed with felonious intent. (*Id*. at p. Supp. 16.) The court observed that California's civil compromise statutes had always been restricted to misdemeanors, and excepted any offense committed "with intent to commit a felony." (*Id*. at p. Supp. 20.) The court rejected a strict meaning of the term "felony" in the statute, holding that such an interpretation would unduly expand the availability of civil compromise. (*Id*. at p. Supp. 21.) Reiterating the New York commissioners' expression of the policy underlying compromise statutes (*id*. at p. Supp. 20), *Moulton* ruled that purpose was furthered by interpreting the word " 'felony' in the sense of distinguishing between misdemeanor offenses subject to compromise and the

14

more serious ones, the compromise of which would be contrary to the purpose of the criminal law."  (*Id*. at p. Supp. 21.)

Based in part on *O'Rear*, *supra*, 220 Cal.App.2d Supp. 927, *Moulton* outlined factors for the court's exercise of discretion in granting a compromise, namely whether (1) the civil injury was coextensive with the criminal violation; (2) the circumstances were such that through private settlement the injury to the public was fully vindicated; and (3) the victim's settlement was completely voluntary.  (*People v. Moulton*, *supra*, 131 Cal.App.3d at pp. Supp. 21-23.)  The record in *Moulton* contained no information to assess the public vindication aspect, and the court had "only fragmentary information" about the grand theft at issue, precluding its ability to assess these considerations.  (*Id*. at pp. Supp. 22-23.)  The appellate division reversed the order of dismissal and directed the trial court to conduct further proceedings in accordance with its conclusions.  (*Id*. at p. Supp. 23.)[6]

---

[6]     The Los Angeles appellate department reiterated the underlying intent of the civil compromise statutes in *People v. Stephen*, *supra*, 182 Cal.App.3d at page Supp. 27: "The legislative intent behind allowing civil compromise of criminal offenses is not to ensure that the victim is maximally compensated for his injury.  Rather, the purpose is to remove from criminal prosecution those offenses for which there is a civil remedy available; the rationale being that the public interest in those cases is best served by requiring the accused to make restitution directly and immediately to the individual victim instead of subjecting him to criminal sanctions for the welfare of society in general."  In holding the victim in that case had obtained satisfaction for his injuries within the meaning of section 1378, which did not require receipt of all civil types of recovery, the appellate department explained that "the civil compromise statute does not in fact condition the approval of a compromise on the commencement of a civil action or on the resolution of such action in any particular fashion.  The requirement that the victim have 'a remedy by a civil action' simply serves to define the class of misdemeanor offenses which may be compromised, i.e. those cases which are in reality of a private rather than a public nature."  (*Ibid*.)

15

Several years later, a different panel of the Los Angeles appellate department that decided *Moulton* squarely held, using *Moulton*'s factors, that a violation of Vehicle Code section 20002, subdivision (a) "is not an offense that should be the subject of civil compromise." (*McWhinney*, *supra*, 206 Cal.App.3d at p. Supp. 12.) *McWhinney* reasoned: "The injury to the public would not be fully vindicated by such a civil compromise. The cost of a 'hit and run' violation is paid for by *every* law-abiding driver in the form of increased insurance premiums. The crime with which the defendant is charged is complete upon the 'running' whether or not his conduct caused substantial or minimal (or indeed any) damage or injury; it is the *running* which offends public policy." (*Id*. at p. Supp. 12.) The appellate department in *McWhinney* was additionally persuaded by *O'Rear*'s conclusion that the gravamen of the hit-and-run offense was the failure to stop and make a report, and thus the private citizen was not a person injured by an act constituting a misdemeanor within the meaning of section 1377. (*Ibid*.) *McWhinney* reversed the trial court's dismissal order. (*Id*. at p. Supp. 13.)

In 1995, the Second District Division One Court of Appeal in *Tischman* disagreed with the appellate departments in both *O'Rear* and *McWhinney* to hold that a misdemeanor hit-and-run offense under Vehicle Code section 20002, subdivision (a) was not precluded from civil compromise as a matter of law, but was subject to compromise in the trial court's discretion. (*Tischman*, *supra*, 35 Cal.App.4th at pp. 176, 181, fn. 4.) *Tischman* relied on cases (including *Byers v. Justice Court* (1969) 71 Cal.2d 1039, vacated by the court in *California v. Byers*, *supra*, 402 U.S. at pp. 424, 434) pointing out that the regulatory purpose behind the offense was not to facilitate criminal prosecutions,

16

but to give an injured person information they need to pursue their civil remedies and thereby protect persons from financial loss caused by irresponsible drivers who damage a vehicle and seek to escape liability. (*Tischman*, 35 Cal.App.4th at pp. 177-178.) The court adopted a dissenting appellate department panel member's reasoning that "civil compromise serves the public need for the efficient administration of justice by resolving relatively minor disputes by eliminating two proceedings—the criminal prosecution of the defendant and the victim's civil suit for financial compensation." (*Id*. at p. 178; see also *id*. at p. 177.) It agreed with a Washington state appellate court that policy considerations (giving restitution to victims of traffic offenses, as one) favored vesting discretion in trial courts to compromise minor offenses such as traffic offenses, which discretion would also operate as a check and balance against the police and prosecutor's powers to arrest and prosecute. (*Id*. at pp. 179-180, citing *State* ex rel. *Fitch v. Roxbury Dist. Court* (1981) 629 P.2d 1341, 1342.) *Tischman* cited the Washington court's rejection (as " 'too facile' ") of the reasoning of *O'Rear* and other cases that the act constituting the hit-and-run crime was leaving the scene, which did not injure the private citizen. (*Tischman*, 35 Cal.App.4th at pp. 180-181.) The *Tischman* court held it was not necessary to have "full congruence" between the crime and civil claim as *O'Rear* had required; "so long as the civil cause of action shares a common element with the criminal offense, compromise is available, subject to the court's discretion to reject a compromise

17

where extenuating circumstances warrant rejection." (*Tischman*, at p. 181.)[7]  It

concluded that "a Vehicle Code section 20002, subdivision (a), violation is not, as a

matter of law, one which can never be compromised under [the civil compromise

statutes]." (*Id*. at p. 181, fn. 4.)  *Tischman* permitted the compromise and dismissal,

because there were no extenuating circumstances in that case and "the civil compromise

thus served the interests of justice, judicial economy, fairness and common sense." (*Id*. at

p. 181.)

## IV.  Martinez *and the Plain Language of the Civil Compromise Statutes Preclude*

## *Compromise of Misdemeanor Hit-and-Run Offenses*

In answering the question presented, we cannot ignore the settled nature of the

misdemeanor hit-and-run offense as described in *Martinez* and other cases, as well as the

plain wording of the civil compromise statutes.  The Legislature has written the law to

permit compromise only "[w]hen the person *injured by an act constituting a*

*misdemeanor* has a remedy by a civil action . . . ." (§ 1377, italics added.)  The simple

word "act" targets particular physical conduct (see Merriam-Webster's Collegiate Dict.

(11th ed. 2006) p. 12 [defining act as the "doing of a thing"]; accord, *People v. Homick*

(2012) 55 Cal.4th 816, 840, 843-844 [discussing words "act or omission" in section 656];

*People v. Belcher* (1974) 11 Cal.3d 91, 98-99 [same, relying on case law focusing on a

defendant's "physical act or conduct"].)  Under *Martinez*, *Carbajal* and *California v.*

---

7     As an example of a circumstance giving the court discretion, *Tischman* pointed to use of law enforcement resources to track down the defendant. (*Tischman*, *supra*, 35 Cal.App.4th at p. 181, fn. 4.)

*Byers*, the conduct rendered criminal in a so-called hit-and-run offense is not the hit, but the run: the act of leaving the scene without exchanging the requisite information. (*Martinez, supra*, 2 Cal.5th at pp. 1102-1103, quoting *California v. Byers, supra*, 402 U.S. at p. 431; *Carbajal, supra*, 10 Cal.4th at p. 1124.) And the Legislature used the narrow phrase "*constituting* a misdemeanor," rather than such language as "in the commission of," which is accorded a more broad meaning. (See *People v. Canela* (2014) 224 Cal.App.4th 703, 710.) The Vehicle Code section 20002, subdivision (a) offense by definition involves an accident causing only injury in the form of property damage; a victim of a misdemeanor hit and run sustains property damage from the collision, not from the driver leaving the scene without providing information. Thus, the victim is not "injured by [the] act constituting" the crime, but by the noncriminal condition precedent to the crime. (*Martinez*, at p. 1102; *Corenbaum v. Lampkin, supra*, 215 Cal.App.4th at p. 1340.) We cannot envision a scenario to the contrary. Moreover, even if a victim of the misdemeanor crime could be said to have suffered injury by the driver's failure to stop and provide identifying information, that injury would be the inability to file suit against the driver, which is not itself redressable in a civil action.

We conclude *Tischman*'s holding cannot survive *Martinez*. The policy rationales expressed by the Washington state court on which *Tischman* relied—including favoring restitution for victims of traffic offenses and placing a "check and balance" on police and prosecutors (*Tischman, supra*, 35 Cal.App.4th at pp. 179-180)—while laudable, "cannot be squared with the plain language" (*Martinez, supra*, 2 Cal.5th at p. 1104) of section 1377, permitting civil compromise only for persons injured by a misdemeanor criminal

19

act for which that person has a civil remedy. We decline to follow the out-of-state authority. (*Episcopal Church Cases* (2009) 45 Cal.4th 467, 490 ["out-of-state decisions are not binding on this court"].) The decisions preceding *Tischman* gave effect to the Legislature's express language (*O'Rear*, *supra*, 220 Cal.App.2d at p. Supp. 931; *McWhinney*, *supra*, 206 Cal.App.3d at p. Supp. 12) and we do so here as well. We must leave it to the Legislature to authorize civil compromise for injuries caused by a noncriminal act, even if such a compromise is in "the interests of justice, judicial economy, fairness [or] common sense." (*Tischman*, at p. 181; *J.M. Huntington Beach Union High School District* (2017) 2 Cal.5th 648, 657, fn. 7 [declining to rewrite statute contrary to its clear language; the Legislature "remains free to consider amending" the statute at issue].)

Further, as the California Supreme Court pointed out in *Carbajal*, *supra*, 10 Cal.4th 1114, a misdemeanor hit and run involving property damage is uniquely a public offense in that every law-abiding driver suffers injury in the form of increased insurance premiums. (*Carbajal*, at p. 1124, quoting *People v. McWhinney*, *supra*, 206 Cal.App.3d at p. Supp. 12.) It is not the sort of offense described in *O'Rear*, *McWhinney* and *Stephen*, where the public interests are better served by a settlement between the defendant and victim. (*O'Rear*, *supra*, 220 Cal.App.2d at p. Supp. 930; *Moulton*, *supra*, 131 Cal.App.3d at pp. Supp. 17-18; *People v. Stephen*, *supra*,182 Cal.App.2d at p. Supp. 27.) A defendant driver's satisfaction of the amount of the victim's property damage stemming from the accident will not vindicate the public harm resulting from that defendant's failure to stop and exchange the required information.

20

Dimacali's arguments do not convince us otherwise. In part, she points to *Tischman*'s rejection of *O'Rear* and *McWhinney* and the policy benefits to extending compromise to a Vehicle Code section 20002 violation. She points out *Tischman* has not been overruled and asserts it is "controlling." Those arguments do not persuade us for the reasons expressed above. Moreover, we are free to disagree with *Tischman*, which is from another district Court of Appeal. (See *County of Kern v. State Dept. of Health Care Services* (2009) 180 Cal.App.4th 1504, 1510.) Dimacali additionally argues that a noncriminal act can be both an essential element of a crime and also a condition precedent. She points to the Judicial Council jury instruction, CALCRIM No. 2150, for the Vehicle Code section 20002 offense to assert that an accident is within each of the four elements required for a conviction. A pattern jury instruction is not itself the law, and it is not binding. (*People v. Alvarez* (1996) 14 Cal.4th 155, 217; *People v. Mojica* (2006) 139 Cal.App.4th 1197, 1204 ["although pattern jury instructions are prepared by distinguished legal scholars and provide a valuable service to the courts, they are not the law and are not binding"].) *Martinez* disposes of both of these arguments in any event. It squarely holds the collision in a hit-and-run accident is not an element of the offense; it "forms no part of the conduct proscribed by" the law and "involve[s] no criminal wrongdoing" (*Martinez*, *supra*, 2 Cal.5th at pp. 1102-1103, 1104-1105) but is only "an event that gives rise to the statutory duty to stop, provide identification, and render aid." (*Id*. at p. 1104.)

Dimacali further argues that the People have misinterpreted *Martinez*, because that case involves victim restitution pursuant to section 1202.4, and not the civil compromise

21

statutes. The proposition that California's hit-and-run statutes target a defendant's flight, and not his or her accident-causing conduct, is a long-settled principle expressed not only in *Martinez* but in numerous other cases. And as we have explained, *Martinez*'s point concerning the conduct made criminal by the hit-and-run statutes is applicable more broadly to instances where the Legislature has required a nexus between an injury or loss and the criminal act. (See *People v. Nuno*, *supra*, 26 Cal.App.5th at pp. 49-50, 52.)

Finally, Dimacali argues the regulatory purpose of Vehicle Code section 20002, subdivision (a) should compel us to affirm the judgment, pointing to the holding in *People v. Carbajal*, *supra*, 10 Cal.4th 1114 that restitution as a condition of probation for a violation of the statute may include the damages stemming from the collision that lead to the "run." *Carbajal*, however, confirms our view that the question at hand is governed by the plain language of the misdemeanor hit-and-run statute. There is a key distinction between the direct victim restitution at issue in *Martinez* and restitution as a condition of probation at issue in *Carbajal*. As *Martinez* explained, the unambiguous language of section 1202.4, which implements the state constitutional right to receive restitution for losses "as a result of criminal activity" from defendants "convicted of the crimes causing the losses they suffer" (Cal. Const., art. I, § 28, subd. (b)(13)(A)), requires a defendant to pay restitution for losses resulting only from the criminal conduct supporting the crimes of which the defendant was convicted. (§ 1202.4 ["a victim of crime who incurs any economic loss as a result of the commission of a crime shall receive restitution directly from a defendant convicted of that crime"]; see *Martinez*, *supra*, 2 Cal.5th at pp. 1104-1105, 1107; *People v. Lai* (2006) 138 Cal.App.4th 1227, 1247.) But an award of

22

restitution is not so limited when imposed as a condition of probation. (*Martinez*, at p. 1101; *People v. Walker* (2014) 231 Cal.App.4th 1270, 1274; *Lai*, at p. 1247.) *Carbajal* pointed out that "California courts have long interpreted the trial court's discretion to encompass the ordering of restitution as a condition of probation even when the loss was not necessarily caused by the criminal conduct underlying the conviction. Under certain circumstances, restitution has been found proper where the loss was caused by related conduct not resulting in a conviction [citation], by conduct underlying dismissed and uncharged counts [citation], and by conduct resulting in an acquittal." (*Carbajal*, *supra*, 10 Cal.4th at p. 1121; see also *Walker*, at p. 1274; *Lai*, at pp. 1247-1248.) Thus, *Carbajal* held the trial court did not err by ordering the defendant who had pleaded no contest to a violation of Vehicle Code section 20002, subdivision (a) to pay restitution to the owner of a car damaged in the accident, as the defendant was responsible for the loss and the damage he caused to the victim's vehicle was " 'reasonably related' " to the crime of hit and run. (*Carbajal*, at pp. 1123-1124.) *Carbajal* provides no basis to uphold the trial court's order in the present case.

DISPOSITION

The order is reversed and the matter remanded with directions that the trial court deny Dimacali's motion for dismissal under sections 1377 and 1378 and conduct such further proceedings as may be required in accordance with this opinion.


O'ROURKE, J.

WE CONCUR:


BENKE, Acting P. J.


IRION, J.

24