Filed 9/15/22
See Concurring Opinion

CERTIFIED FOR PARTIAL PUBLICATION*

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E071794 |
| v. | (Super.Ct.No. RIF1701359) |
| ERIC LAVELL FULLER, JR., et al., | OPINION ON TRANSFER |
| Defendants and Appellants. | |

APPEAL from the Superior Court of Riverside County.  John D. Molloy, and

David A. Gunn, Judges.  Affirmed in part, vacated in part, and remanded with directions.

David Zarmi for Defendant and Appellant Eric Lavell Fuller, Jr.

Steven A. Brody, under appointment by the Court of Appeal, for Defendant and

Appellant Destinee Sharniele Tresvant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney

General, Charles C. Ragland, Assistant Attorney General, A. Natasha Cortina, Jennifer B.

_____

* Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is
certified for publication with the exception of part A of the Background and Parts A, B,
and C of the Discussion.

Truong, and Christine Y. Friedman, Deputy Attorneys General, for Plaintiff and Respondent.

In *People v. Tirado* (2022) 12 Cal.5th 688, 692 (*Tirado*), the Supreme Court held that when a firearm enhancement under Penal Code section 12022.53 has been charged and found true, a sentencing court has discretion to strike the enhancement and impose an uncharged lesser included enhancement. (Undesignated statutory citations are to the Penal Code.) On this appeal, the People argue that a sentencing court's discretion under *Tirado* is limited to imposing a lesser enhancement under section 12022.53, so a court that strikes an enhancement under section 12022.53 cannot impose an uncharged lesser included enhancement under section 12022.5. We disagree and hold that under *Tirado* the sentencing court may impose an uncharged lesser included enhancement under section 12022.5 after striking a greater enhancement under section 12022.53.

BACKGROUND

This appeal arises from the armed robbery of a nail salon followed by a high-speed pursuit of the perpetrators after they fled the scene. Victims identified Aaron Murl Moses, Jr., Eric Lavell Fuller, Jr., and Destinee Sharniele Tresvant as three of the perpetrators. A jury convicted Moses and Fuller of numerous offenses arising from the incident and found related firearm enhancements true. Tresvant pleaded guilty after the

2

trial court found her competent to stand trial and found that she was ineligible for pretrial mental health diversion.[1]

On appeal, Tresvant argues that the trial court erred by directing a verdict against her in a competency proceeding and by failing thereafter to conclude that she did not make a prima facie showing for pretrial mental health diversion under section 1001.36. Fuller and Tresvant argue that the trial court abused its discretion by failing to consider imposing uncharged lesser included firearm enhancements under section 12022.5, subdivision (a) (section 12022.5(a)) instead of imposing the charged enhancements under section 12022.53, subdivision (b) (section 12022.53(b)), and Tresvant argues that the trial court abused its discretion by failing to strike the enhancement. Fuller also contends that the trial court failed to consider his ability to pay various fines and fees. Moses raised numerous sentencing issues.

In a prior unpublished opinion, we vacated Moses's sentence because we concluded that it was unauthorized. The trial court failed to impose a sentence for each of Moses's offenses. (*People v. Moses* (July 1, 2021, E071794) [nonpub.].) We consequently vacated Moses's sentence and remanded the matter for resentencing.

The Supreme Court granted review, vacated our prior opinion, and transferred the case of Fuller and Tresvant (collectively, defendants) back to us with directions to reconsider it in light of *Tirado*. Earlier, while review was pending, the Supreme Court

---

[1]     In addition, codefendants Wensheila Marsha Swisher and Destin Carl Pipkins pled guilty before trial to various offenses, resulting in sentences of two years and 15 years in state prison.

3

severed Moses's case, granted his request to dismiss review as to him, and remanded the matter with directions for us to issue a remittitur as to Moses, which we did.[2] We accordingly do not address any issues concerning Moses in this opinion. We also do not describe the underlying facts from the jury trial for Moses and Fuller, because the only issues we address as to Fuller pertain to sentencing issues that do not depend on those facts.

On remand from the Supreme Court, Fuller, Tresvant, and the People filed supplemental briefs concerning *Tirado*. The People argue that *Tirado* only authorizes a trial court to impose uncharged lesser enhancements included within section 12022.53, so it does not apply here. Defendants disagree.

We also asked the parties to submit supplemental briefing on the effect of Senate Bill No. 567 (Senate Bill 567) (2021–2022 Reg. Sess.) on defendants' sentences, which they have done. The People concede that Senate Bill 567 applies retroactively to this case but argue that remand is not warranted. Again, defendants disagree.

---

[2]    The Supreme Court dismissed review as to Moses before it vacated our prior opinion. We issued the remittitur as to Moses before the Supreme Court vacated our prior opinion. We and the Supreme Court therefore lost jurisdiction over Moses's case before the prior opinion was vacated. (See *In re Martin* (1962) 58 Cal.2d 133, 138 ["the general rule is that an appellate court loses all control and jurisdiction over a cause after remittitur has been issued"].) Our prior opinion therefore was not vacated as to Moses.

A. *Tresvant's Competency to Stand Trial*

Before trial commenced for all defendants, Tresvant's counsel expressed doubt about Tresvant's competency, because Tresvant had made statements to counsel about the presence of FBI agents and people with a third eye in her cell. The trial court suspended proceedings as to Tresvant. After Tresvant was examined by court-appointed medical professionals for the defense and the prosecution, the court held a competency trial before a jury.

1. *Defense Evidence*

The defense presented one witness, Dr. William H. Jones, Ph.D., a court-appointed clinical psychologist who in October 2018 had conducted a 90-minute evaluation of Tresvant for competency. Dr. Jones reviewed Tresvant's police records but did not review her mental health records from jail or her childhood medical records. He questioned Tresvant about her family, education, relationships, employment history, medical history, and psychiatric history. He also asked Tresvant questions designed to elicit information about her psychological functioning, how she thinks, and whether she was experiencing symptoms of emotional distress. He further questioned Tresvant about "her understanding of the courtroom proceedings," and he believed that Tresvant "appear[ed] to understand" that the purpose of the evaluation was to determine her competency.

Tresvant reported that as a child she had been treated for unspecified mental health issues. When she was interviewed, Tresvant was taking two types of antidepressant

5

medications. Tresvant reported that she was experiencing auditory and visual hallucinations and that she had heard hallucinated voices since childhood but had not heard any hallucinated voices after she started taking medication in jail. She claimed that the hallucinated voices distracted her and influenced her behavior. Dr. Jones did not test Tresvant to determine if she was malingering and did not consider the inconsistencies in her interview sufficient to conclude that she was malingering.

On the basis of his 90-minute evaluation of Tresvant, Dr. Jones concluded and summarized in a written report that Tresvant suffered from paranoid schizophrenia, was not competent to stand trial, and would not be able to assist her attorney in presenting a defense.

On cross-examination, Dr. Jones testified that after preparing the report he changed his opinion about Tresvant's competency to stand trial and whether she suffered from paranoid schizophrenia. Before testifying, Dr. Jones reviewed Tresvant's mental health records from jail and reports prepared by two other mental health experts, Dr. David Walsh, Ph.D., and Dr. Michael E. Kania, Ph.D., who had evaluated Tresvant before Dr. Jones.

In reviewing Tresvant's medical records, Dr. Jones learned that when Tresvant first spoke with mental health staff at jail "she did not report any voices." Tresvant instead presented to them as having anxiety and depression and was diagnosed as suffering from major depressive disorder of an unspecified degree—mild, moderate, or severe. Dr. Jones noted that "[t]here's a type of severe depression in which a person may

6

hear hallucinated voices, but that was not indicated in [Tresvant's] records." In addition, it is possible that someone suffering from severe major depressive disorder could suffer from hallucinations, and "depression, in some cases, could make a person incompetent."

A few weeks before Dr. Jones evaluated Tresvant, Dr. Walsh evaluated her and reported that Tresvant "did not endorse or exhibit any symptoms of psychosis, mania, panic or intoxication." In reviewing the reports of Drs. Walsh and Kania, Dr. Jones was struck by the fact that Tresvant had reported hallucinations to one of those doctors and not to the other. Having reviewed the additional material about Tresvant's mental health, Dr. Jones reflected on cross-examination about how some of Tresvant's claims of auditory and visual hallucinations to him had been "unusual" or "odd" and were not of the kind typically reported by individuals suffering from paranoid schizophrenia. Tresvant's volunteering that the voices "never instructed her to hurt anybody else" also was atypical, but he noted that inmates who express that they might hurt someone else are housed differently in jail.

Given the variation in Tresvant's reports of hallucinations, Dr. Jones found his conclusion that Tresvant experienced hallucinations to be "more questionable." On the basis of the inconsistent reporting of hallucinations to Drs. Walsh and Kania and to mental health staff at jail, Dr. Jones reported that he had become "doubtful about the schizophrenia conclusion," thinking it was "probably not correct." Dr. Jones opined that Tresvant suffered instead from depression and anxiety. He doubted that Tresvant's responses to him were accurate. On the basis of "all the new information" he had

obtained and reviewed, Dr. Jones opined that a "preponderance of the evidence supported" the conclusion that Tresvant was competent to stand trial.

### 2. *Directed Verdict Motion*

Following the defense case, the prosecutor orally moved for a directed verdict, arguing that there was not "sufficient evidence to sustain a jury to find, even by a preponderance of the evidence, that the defendant is incompetent." The court entertained argument from both parties and reserved ruling on the motion until after hearing the prosecution's evidence.

### 3. *Prosecution Evidence*

The prosecution called three witnesses: Dr. Walsh and two deputy probation officers who had interacted with Tresvant in juvenile hall. Dr. Walsh opined that Tresvant was competent to stand trial, and Dr. Walsh did not believe that Tresvant suffered from any mental illness, including paranoid schizophrenia. Tresvant did not exhibit "any outward symptoms of mental illness," psychosis, panic, or intoxication. Dr. Walsh believed that Tresvant was being voluntarily evasive, a conclusion he did not reach lightly, and that any symptoms of impairment she might have been displaying resulted from "an intentional strategy" and were "not due to mental illness." Dr. Walsh knew that Tresvant was taking antidepressant medication, which he explained is "relatively common" in jail.

In May 2017, approximately one month after the offenses were committed, Deputy Probation Officer Colin Villiers interviewed Tresvant for the purpose of

8

preparing a juvenile fitness hearing report. Officer Villiers questioned Tresvant about her mental health history, and Tresvant said that she had never had any mental health treatment or counseling or been prescribed any psychotropic medication. She "did not believe she needed counseling." Tresvant seemed "quite bright," "pleasant, attentive, funny, [and] engaging." Supervising Probation Officer Todd Hough testified in 2017 that while Tresvant was housed at the juvenile hall where he worked, Tresvant was "one of [the] top youth in the unit," where she was considered a leader, was "very respectful to staff," interacted well with her peers, and did well in school.

4. *Directed Verdict on Competency*

After hearing the prosecution's evidence, the court concluded that Tresvant had not carried her burden of demonstrating by a preponderance of the evidence that she was incompetent to stand trial. Finding there to be no substantial evidence to support a verdict that Tresvant was incompetent, the court directed the verdict against Tresvant and found her to be competent.

B. *Pretrial Mental Health Diversion and Tresvant's Guilty Plea and Sentencing*

After the trial court found Tresvant competent to stand trial, Tresvant filed two motions for pretrial mental health diversion on the ground that she suffers from major depressive disorder. The trial court conducted a hearing on the motions and found that Tresvant did not make a prima facie showing of two of the eligibility requirements for diversion.

9

Tresvant thereafter pled guilty to five counts of robbery (for five separate victims) and to one count of recklessly evading an officer, and she admitted as true that she personally used a firearm in committing each of the five robbery offenses. (§§ 211, 12022.53(b), 1192.7, subd. (c)(8); Veh. Code, § 2800.2.) Tresvant was 17 years old when she committed the offenses. In sentencing Tresvant, the court recognized that she was young, had no prior record, had a difficult childhood, and pled guilty. In considering Tresvant's age, the court took into account "the immaturity and the impetuosity of the young folks to make stupid decisions." The court weighed the mitigating circumstances against the gravity of offenses, which resulted in people being "terrorized," and the court indicated that there needed to be "serious consequences" for "terrorizing folks." The court sentenced Tresvant to 14 years in state prison. For the first robbery offense (count 1), the court sentenced her to the midterm sentence of three years.

C. *Fuller's Convictions and Sentence*

A jury convicted Fuller of five counts of robbery (one for each victim) and one count of recklessly evading an officer. (§ 211; Veh. Code, § 2800.2.) The jury found true that Fuller personally used a firearm in committing each of the robbery offenses. (§§ 12022.53(b), 1192.7, subd. (c)(8).) The jury deadlocked on great bodily injury enhancements associated with the first two robbery counts, so the court declared a mistrial as to those allegations. (§ 12022.7, subd. (a).) The court granted the People's motion to dismiss those allegations. Fuller was 17 years old when he committed the offenses.

After considering Fuller's age and various aggravating circumstances, the trial court imposed the upper term of five years on count 1, the first robbery offense. (§ 213, subd. (a)(2).) The court imposed consecutive sentences for all of the robbery offenses and declined to strike the firearm enhancements. With respect to the firearm enhancement associated with count 1, the court acknowledged that it had the discretion to strike the enhancement but declined to do so, explaining that "[t]his is exactly the type of case that falls squarely within the heart of what the [L]egislature was after when they enacted this statute." The court sentenced Fuller to 32 years and four months in state prison.

## DISCUSSION

A. *Tresvant's Competency to Stand Trial*

Tresvant argues that the trial court erred by directing a verdict for the prosecution on her competency to stand trial. She claims that there was substantial evidence from which a jury could have found her incompetent and that she is entitled to a new trial on her competency. We are not persuaded.

"A person shall not be tried or adjudged to punishment . . . while that person is mentally incompetent." (§ 1367, subd. (a); *People v. Rogers* (2006) 39 Cal.4th 826, 846.) "A defendant is mentally incompetent if, as a result of a mental disorder or developmental disability, he or she is unable to understand the nature of the criminal proceedings or to assist counsel in the conduct of a defense in a rational manner." (*People v. Lawley* (2002) 27 Cal.4th 102, 131 (*Lawley*).) "When the accused presents

11

substantial evidence of incompetence, due process requires that the trial court conduct a full competency hearing." (*Ibid.*; § 1368.)

"A defendant is presumed competent unless the contrary is proven by a preponderance of the evidence," (*Lawley*, *supra*, 27 Cal.4th at p. 131) and the defendant bears the burden of proof (*People v. Mendoza* (2016) 62 Cal.4th 856, 871). Upon commencement of the competency trial, "counsel for the defendant shall offer evidence in support of the allegation of mental incompetence," and the prosecution follows by presenting its case. (§ 1369, subds. (b)(1), (c).)

Even though a competency hearing arises in the context of a criminal trial, the hearing "is a special proceeding, governed generally by the rules applicable to civil proceedings." (*Lawley*, *supra*, 27 Cal.4th at p. 131; *People v. Lawson* (1918) 178 Cal. 722, 728; see also *People v. Conrad* (1982) 132 Cal.App.3d 361, 374 (*Conrad*) [affirming the trial court's entry of judgment notwithstanding the verdict on the defendant's competence]; *People v. Mapp* (1983) 150 Cal.App.3d 346, 351, 353 (*Mapp*) [relying on *Conrad* in affirming directed verdict for the prosecution in a proceeding regarding restoration of sanity].) Code of Civil Procedure section 630 provides that "after all parties have completed the presentation of all of their evidence in a trial by jury, any party may, without waiving his or her right to trial by jury in the event the motion is not granted, move for an order directing entry of a verdict in its favor." (Code Civ. Proc., § 630, subd. (a).) "In considering whether there was error in granting of the directed verdict, we must view the evidence in the light most favorable to [Tresvant] and indulge

12

in every legitimate inference that may be drawn from the evidence in [her] favor and disregard conflicting evidence to determine whether there was evidence of sufficient substantiality to support a verdict" that she was not competent to stand trial. (*Mapp*, *supra*, 150 Cal.App.3d at p. 351.) To be substantial, evidence "must be 'of ponderable legal significance . . . reasonable in nature, credible, and of solid value.'" (*People v. Johnson* (1980) 26 Cal.3d 557, 576 (*Johnson*).) We independently review a directed verdict. (*Guillory v. Hill* (2015) 233 Cal.App.4th 240, 249.)

Tresvant's only witness was Dr. Jones, and he concluded that she was competent to stand trial. In arguing that there was substantial evidence from which a jury could have concluded otherwise, Tresvant points to Dr. Jones's initial conclusion that Tresvant was not competent to stand trial, which was based solely on his interview of her. Tresvant argues that the trial court improperly weighed the credibility of witnesses and was required to ignore Dr. Jones's subsequent conclusion that she was competent to stand trial. But this was not a situation in which competing experts reached different conclusions, and the trial court credited one expert opinion while discrediting the other. Instead, the *same expert* withdrew his prior opinion and concluded that Tresvant was competent to stand trial. Dr. Jones's repudiation of his prior opinion in the written report deprived that opinion of evidentiary value—that is, it was not "'reasonable in nature, credible, and of solid value.'" (*Johnson*, *supra*, 26 Cal.3d at p. 576.) There consequently was no expert evidence that Tresvant was not competent to stand trial. Thus, viewing the

13

evidence in the light most favorable to Tresvant, the record does not contain any evidence, let alone substantial evidence, that she was not competent to stand trial.

Because there was no evidence from which the jury could conclude that Tresvant was not competent to stand trial, we conclude that the trial court did not err by entering a directed verdict against Tresvant on her competency.

B. *Pretrial Mental Health Diversion for Tresvant*

Tresvant next argues that the trial court erred by concluding that she did not make a prima facie showing of eligibility for pretrial mental health diversion under section 1001.36. We conclude that the trial court did not abuse its discretion.

1. *Relevant Proceeding*

Attached to Tresvant's second motion for pretrial mental health diversion were the October 26, 2018, competency evaluation from Dr. Jones in which he had concluded she suffered from paranoid schizophrenia, her medical records from jail, various academic transcripts and certificates, and letters from friends and family. A California assemblyman who had known Tresvant her entire life described her as being "a strong leader among her peers in the community." Someone else with an unspecified connection to Tresvant described her as "a born leader." Others remarked on her academic prowess, intelligence, and strength.

Sometime after finding Tresvant competent to stand trial, the trial court held a hearing it described as "a prima facie diversion hearing" under section 1001.36 to determine whether Tresvant had made a prima facie showing for pretrial mental health

14

diversion. The trial court assumed for the sake of argument that Tresvant had made a prima facie showing that she suffered from a qualifying mental health disorder (namely, major depressive disorder) and that the disorder was treatable. But the trial court found that Tresvant had failed to make a prima facie showing that she did not pose an unreasonable risk of danger to public safety if treated in the community and that her disorder played a significant role in the commission of the charged offense.

With respect to whether Tresvant's major depressive disorder played a significant role in the commission of the charged offenses, defense counsel made an offer of proof that Dr. Jones would testify that (1) "he wrote in the report that her major depressive disorder influenced her, or somehow the condition allowed her to be manipulated to go into a vehicle where co-defendants were committing this robbery," (2) Tresvant suffered from this condition when the robberies were committed, and (3) people suffering from major depressive disorder are followers and not leaders. The court accepted that there existed evidence that Tresvant was depressed after having been in custody for over one year but concluded there was no evidence that she suffered from depression when the crimes were committed. The court explained, "[t]here is no real indication, even from the doctor's reports that I reviewed, that she was suffering from that type of condition based on responses from her family and friends at the time of the incident herself."

2. *Analysis*

Section 1001.36 provides that certain criminal defendants suffering from qualifying mental disorders may be eligible for pretrial diversion, which the statute

15

defines as "postponement of prosecution, either temporarily or permanently, at any point in the judicial process from the point at which the accused is charged until adjudication, to allow the defendant to undergo mental health treatment." (§ 1001.36, subds. (a)-(c).) For defendants charged with a qualifying crime, a trial court may grant pretrial diversion if all of the following requirements are met: (1) The court is satisfied that the defendant suffers from a qualifying mental disorder; (2) the court is satisfied that the disorder played a significant role in the commission of the charged offense; (3) a qualified mental health expert opines that the defendant's symptoms will respond to mental health treatment; (4) the defendant consents to diversion and waives his or her speedy trial right; (5) the defendant agrees to comply with treatment; and (6) the court is satisfied that the defendant will not pose an unreasonable risk of danger to public safety if treated in the community. (§ 1001.36, subd. (b)(A)-(F); *People v. Frahs* (2020) 9 Cal.5th 618, 626-627 (*Frahs*).) "If the defendant makes a prima facie showing that he or she meets all of the threshold eligibility requirements and the defendant and the offense are suitable for diversion, and the trial court is satisfied that the recommended program of mental health treatment will meet the specialized mental health treatment needs of the defendant, then the court may grant pretrial diversion. (§ 1001.36, subds. (a), (b)(3) & (c)(1).)" (*Frahs*, *supra*, at p. 627.) "The hearing on the prima facie showing shall be informal and may proceed on offers of proof, reliable hearsay, and argument of counsel. If a prima facie showing is not made, the court may summarily deny the request for diversion or grant any other relief as may be deemed appropriate." (§ 1001.36, subd. (b)(3).)

16

Diversion under section 1001.36 is discretionary, not mandatory, even if all of the requirements are met. (§ 1001.36, subd. (a); *Frahs*, *supra*, 9 Cal.5th at p. 626.) We therefore review for abuse of discretion the trial court's decision whether to grant a request for mental health diversion. (See *People v. Hall* (2016) 247 Cal.App.4th 1255, 1264 (*Hall*).)

Tresvant argues that we do not review for abuse of discretion the trial court's determination of whether a defendant has made a prima facie showing of eligibility, arguing instead that she "need only show the court erred in failing to apply the correct prima facie analysis to her showing of eligibility." For the two factors on which the trial court based its determination in this case, we do not agree. We review for abuse of discretion the trial court's determination of whether resentencing a petitioner under section 1170.18 "would pose an unreasonable risk of danger to public safety." (*People v. Jefferson* (2016) 1 Cal.App.5th 235, 242; *Hall*, *supra*, 247 Cal.App.4th at pp. 1263-1264.) Section 1001.36 expressly adopts the definition of "unreasonable risk of danger to public safety" that is provided in section 1170.18. (§ 1001.36, subd. (b)(1)(F).) Tresvant has not provided any reason why a different standard of review should apply to reviewing the trial court's determination of whether a defendant has made a prima facie showing regarding this identical factor in section 1001.36. Likewise, the court's determination of whether the court "is satisfied that the defendant's mental disorder was a significant factor in the commission of the charged offense" (§ 1001.36, subd. (b)(1)(B)) appears to be inherently discretionary—the court must exercise its discretion to determine whether it

17

is "satisfied" that the role of the mental disorder was sufficiently "significant" to qualify. Because the trial court must exercise its discretion in making both of those determinations, we review them for abuse of discretion. (*In re White* (2020) 9 Cal.5th 455, 469.) At the same time, we recognize that "'[a]n abuse of discretion is shown when the trial court applies the wrong legal standard'" (*Hall*, *supra*, at p. 1264), and we independently review questions of statutory interpretation (*People v. Dimacali* (2019) 32 Cal.App.5th 822, 827).

Tresvant argues that her offers of proof concerning Dr. Jones's testimony constituted a prima facie showing that her mental health disorder was a "significant factor" in her commission of the offenses. She contends that at the prima facie showing stage the trial court was not allowed to consider anything except her uncontradicted evidence in determining whether she made a prima facie showing. In the context of this case, we do not agree.

In general, a prima facie showing "'is one that is sufficient to support the position of the party in question.'" (*People v. Garcia* (2020) 57 Cal.App.5th 100, 110; *People v. Law* (2020) 48 Cal.App.5th 811, 820.) Prima facie evidence, however, ""is that which suffices for the proof of a particular fact, until contradicted and overcome by other evidence. It may, however, be contradicted, and other evidence is always admissible for that purpose."'" (*People v. Nunez* (2020) 57 Cal.App.5th 78, 88, review granted Jan. 13, 2021, S265918.)

Nothing in the language of the statute suggests that, in determining whether a defendant has made a "prima facie showing" for eligibility, a trial court is required to consider only the defendant's evidence. The statute does not limit the court's consideration of "offers of proof, reliable hearsay, and argument of counsel" to those presented or made by the defense. (§ 1001.36, subd. (b)(3).) The Legislature knew how to and could have added limiting language to the statute if it desired such a limitation. (*People v. Albillar* (2010) 51 Cal.4th 47, 57.) We will not read such limiting language into the statutory text. (*Pacific Gas & Electric Co. v. Superior Court* (2017) 10 Cal.App.5th 563, 571.) In the absence of such an express limitation, we conclude that the trial court is not limited to consideration of evidence, argument by counsel, and offers of proof made by the defendant in determining whether the defendant has made a prima facie showing of eligibility for diversion.

Moreover, in the context of this case, requiring the court to consider only Tresvant's evidence and offers of proof would be particularly absurd, given the evidence that had already been introduced about Tresvant's mental health in the competency proceeding. It would make no sense to require the court to disregard that evidence, find a prima facie case on that basis, set a further hearing on diversion, and then be confronted with the same evidence that the court knew about but deliberately ignored at the prima facie showing stage. Thus, in determining whether Tresvant made a prima facie showing, the trial court properly considered evidence outside of the offers of proof presented by Tresvant. The court did not apply an improper analytical framework.

19

The trial court did not abuse its discretion by concluding that Tresvant did not make a prima facie showing that major depressive order was a significant factor in her commission of the offenses. First, the offer of proof that Dr. Jones would testify that he wrote in his report that Tresvant's major depressive disorder influenced her or somehow "allowed her to be manipulated to go into a vehicle where co-defendants were committing this robbery" is of negligible value. Dr. Jones's report was submitted in support of Tresvant's motion, and in it he concluded that Tresvant suffered from paranoid schizophrenia and not major depressive disorder, as proffered by defense counsel. Moreover, the paranoid schizophrenia diagnosis (which Dr. Jones retracted at the competency trial, as described *ante*) was the basis for the report's statement that Tresvant was a "a very dependent and passive person who would be likely to blindly follow the suggestions of her attorney or peers." The first offer of proof concerning Dr. Jones's testimony thus is conclusively refuted by other evidence Tresvant submitted with her motion.

Second, the remaining offers of proof concerning Dr. Jones's testimony do not address *how* Tresvant's mental disorder played a role in her commission of the offenses, let alone the significance of that role. Aside from the statements about what Dr. Jones had written in his report, the offers of proof were that Dr. Jones would testify that Tresvant suffered from major depressive disorder when the robberies were committed and that people who suffer from major depressive disorder are followers and not leaders. Evidence that a defendant suffers from a mental disorder that generally tends to make

20

someone a follower and not a leader does not show that the disorder played a significant role (or any role) in that particular defendant's commission of that particular offense. The evidence does not exclude the obvious possibility that leaders can suffer from major depression too, or that a person suffering from major depression who consequently tends to be a follower in some circumstances may also be a leader or coequal participant in others. The offer of proof that Dr. Jones would testify that Tresvant suffers from major depression and that people who suffer from major depression tend to be followers rather than leaders thus does not constitute a prima facie showing that Tresvant's alleged mental disorder played a significant role, or any role at all, in her commission of the offenses. Therefore, even if the trial court were limited to considering Tresvant's offers of proof, the trial court did not abuse its discretion by concluding that Tresvant did not make a prima facie showing that a mental disorder played a significant role in her commission of the offenses.

The evidence introduced at the competency trial further supports our conclusion that the trial court did not abuse its discretion. At the competency trial, there was no evidence that Tresvant was depressed *when she committed the offenses*. Instead, the evidence showed that she suffered from an unspecified degree of major depressive disorder while incarcerated, which Dr. Walsh explained is common. The probation officers who interacted with Tresvant around the time of her detention (immediately after the robberies were committed) described her as bright, engaged, and a leader. Those impressions were overwhelmingly supported by the reference letters Tresvant submitted,

21

in which numerous people described her as smart and a leader. Moreover, when she was evaluated for a juvenile fitness hearing one month after the offenses were committed, Tresvant told the probation officer that she did not have any mental health history and that she "did not believe she needed counseling." Given all of that evidence, it was well within the trial court's discretion to determine that there was no prima facie showing that at the time of the charged offenses Tresvant suffered from depression at all, let alone to such a degree that her depression played a significant role or any role in her commission of the offenses.

For all of these reasons, we conclude that the trial court did not abuse its discretion by concluding that Tresvant failed to make a prima facie showing that her mental disorder was not a significant factor in the commission of the offenses. Because a defendant is not statutorily eligible for pretrial mental health diversion unless all of the threshold criteria are met (§ 1001.36, subd. (b)(1)), we need not and do not decide whether the trial court abused its discretion by concluding that Tresvant did not make a prima facie showing that she did not pose an unreasonable risk of danger to public safety.

C. *Senate Bill 567*

"Robbery of the second degree is punishable by imprisonment in the state prison for two, three, or five years." (§ 213, subd. (a)(2).) Senate Bill 567 amended section 1170 to impose limits on a trial judge's discretion in choosing between the low, middle, and upper terms of a sentencing triad. (Stats. 2021, ch. 731.)

22

Senate Bill 567 amended section 1170 effective January 1, 2022.[3] (Stats. 2021, ch. 731.) Before the amendments, if a statute prescribed a sentencing triad, the court had discretion to choose any one of the three terms. (Stats. 2021, ch. 731; Former § 1170, subd. (b).) When presented with such a choice now, the court must impose the low term if the defendant's youth or another specified mitigating factor (such as the defendant's experience of childhood trauma) was "a contributing factor in the commission of the offense," "unless the court finds that the aggravating circumstances outweigh the mitigating circumstances that imposition of the lower term would be contrary to the interests of justice" (§ 1170, subd. (b)(6)(A)-(B)). A defendant is considered a youth for purposes of this provision if the defendant was "under 26 years of age on the date the offense was committed." (§§ 1016.7, subd. (b), 1170, subd. (b)(6)(B).)

In addition, section 1170 now provides that the upper term shall not be imposed unless the facts underlying the aggravating circumstances that would justify imposing the upper term are (1) stipulated to by the defendant, (2) found true by the trier of fact

---

[3] On October 8, 2021, the Governor signed into law three bills that amended section 1170: Assembly Bill No. 124 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 695, § 5), Assembly Bill No. 1540 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 719, § 2), and Senate Bill 567 (Stats. 2021, ch. 731, § 1.3). Senate Bill 567 has the highest chapter number, so we presume that it was the last enacted of the bills. (Gov. Code, § 9510; *People v. Gerson* (2022) 80 Cal.App.5th 1067, 1074, fn. 2 (*Gerson*).) Senate Bill 567 incorporates the changes made to section 1170 by the other bills if all three bills were enacted and became effective on or before January 1, 2022, and Senate Bill 567 was the last enacted bill. (Stats. 2021, ch. 731, §3(c).) The conditions were satisfied. Because Senate Bill 567 was enacted after the other two statutes, Senate Bill 567 became the operative legislation. (Stats. 2021, ch. 731, §§ 1.3, 3(c); Gov. Code, § 9605, subdivision (b).) We therefore refer to all of the changes made to section 1170 as deriving from Senate Bill 567.

beyond a reasonable doubt, or (3) based on prior convictions evidenced by a certified record of conviction. (§ 1170, subd. (b)(2)-(3).)

Defendants argue that we must remand for resentencing because the trial court's imposition of the upper term for Fuller on count 1 and the midterm for Tresvant on count 1 does not satisfy the new requirements of amended section 1170, which took effect while their appeal was pending. The People concede that Senate Bill 567 applies retroactively to this appeal, and we agree. (See, e.g., *People v. Flores* (2022) 75 Cal.App.5th 495, 500; *People v. Garcia* (2022) 76 Cal.App.5th 887, 902 (*Garcia*).)

Both Fuller and Tresvant were 17 years old when the offenses were committed. In sentencing defendants, the trial court considered defendants' ages. But the court was not constrained by Senate Bill 567's amendments to section 1170 at sentencing, because they did not yet exist. Thus, the court was not bound by the now-governing presumption favoring imposition of the low term if defendants' ages contributed to their commission of the offenses (§ 1170, subd. (b)(6)(B)), and the court consequently did not determine whether their ages did contribute.

"When being sentenced, a defendant is entitled to decisions made by a court exercising informed discretion." (*Tirado*, *supra*, 12 Cal.5th at p. 694; *People v. Flores* (2020) 9 Cal.5th 371, 431; *People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391.) When, as here, the trial court did not have the benefit of ameliorative legislation affecting its sentencing discretion, "'the appropriate remedy is to remand for resentencing unless the record "clearly indicate[s]" that the trial court would have reached the same conclusion

"even if it had been aware that it had such discretion."'" (*Flores*, *supra*, at p. 432; *Gutierrez*, *supra*, at p. 1391.)

We cannot say that the record clearly indicates that the trial court would impose the same sentences given the new presumptions and criteria affecting its discretion in section 1170, subdivision (b). In particular, we cannot say on this record whether the trial court would conclude that defendants' ages contributed to their commission of the offenses so as to trigger the low term presumption in subdivision (b)(6) of section 1170. Moreover, we also cannot say with confidence what sentences the court would impose if it applied that presumption. We consequently vacate Fuller's upper term sentence on count 1 and Tresvant's middle term sentence on count 1. (*People v. Flores* (2022) 73 Cal.App.5th 1032, 1039.)

Because we are vacating defendants' sentences on count 1, defendants are entitled to a full resentencing. (*Gerson*, *supra*, 80 Cal.App.5th at p. 1096.) Under the full resentencing rule, "when part of a sentence is stricken on review, on remand for resentencing 'a full resentencing as to all counts is appropriate, so the trial court can exercise its sentencing discretion in light of the changed circumstances.'" (*People v. Buycks* (2018) 5 Cal.5th 857, 893; *People v. Valenzuela* (2019) 7 Cal.5th 415, 424-425.) The trial court thus will have the opportunity to "revisit all of its sentencing choices in light of the new legislation." (*Garcia*, *supra*, 76 Cal.App.5th at p. 902.) The sentences imposed on resentencing may not exceed the original aggregate sentences. (*People v.*

*Jones* (1994) 24 Cal.App.4th 1780, 1783-1784; *People v. Hanson* (2000) 23 Cal.4th 355, 357-358.)

We do not address defendants' other claimed errors about sentencing because the trial court can address them at resentencing. For example, Fuller will have the opportunity to present evidence and argument concerning his ability to pay any fines, fees, and assessments. Tresvant will have the opportunity to reargue that her firearm enhancement should be stricken and to present evidence and argument about whether the low term presumption also applies because of childhood trauma. (§ 1170, subd. (b)(6)(A).) Likewise, we do not address Fuller's or the People's arguments concerning the amendments to subdivision (b)(2) of section 1170 and the court's imposition of the upper term sentence for count 1 on Fuller. If the court concludes under subdivision (b)(6)(B) of section 1170 that Fuller should not be sentenced to the low term, the court can then consider whether it should sentence Fuller to the upper term in light of the new requirements of subdivision (b)(2) of section 1170.

D. *Lesser Included Firearm Enhancements*

Defendants argue that the trial court erred by failing to consider imposing uncharged lesser included firearm enhancements under section 12022.5(a) rather than imposing the charged firearm enhancements under section 12022.53(b). In our prior opinion, we rejected that argument and held that the court was not authorized to impose an uncharged lesser firearm enhancement. (*People v. Moses* (July 1, 2021, E071794) [nonpub.].) The Supreme Court has since held to the contrary in *Tirado*, *supra*, 12

26

Cal.5th 688, 692. The People argue that *Tirado* does not apply here because it applies only to lesser enhancements under section 12022.53, but we disagree. Thus, on remand, the court may consider imposing uncharged lesser firearm enhancements under section 12022.5(a).

Section 12022.5(a) provides that "any person who personally uses a firearm in the commission of a felony or attempted felony shall be punished by an additional and consecutive term of imprisonment in the state prison for 3, 4, or 10 years, unless use of a firearm is an element of that offense."

Section 12022.53 creates "a tiered system of sentencing enhancements for specified felonies involving firearms." (*Tirado*, *supra*, 12 Cal.5th at p. 692.) "Section 12022.53, subdivision (a) lists the felonies to which the section applies. Section 12022.53(b) mandates the imposition of a 10-year enhancement for personal *use* of a firearm in the commission of one of those felonies; section 12022.53[, subdivision] (c) mandates the imposition of a 20-year enhancement for personal and intentional *discharge* of a firearm; and section 12022.53[, subdivision] (d) provides for a 25 year-to-life enhancement for personal and intentional discharge of a firearm *causing great bodily injury or death* to a person other than an accomplice." (*Id.* at p. 695.) Subdivision (h) of section 12022.53 provides that under section 1385 a court may, "in the interest of justice," "strike or dismiss an enhancement otherwise required to be imposed by this section." Subdivision (j) of section 12022.53 provides: "When an enhancement specified in this section has been admitted or found to be true, the court shall impose

27

punishment for that enhancement pursuant to this section rather than imposing punishment authorized under any other law, unless another enhancement provides for a greater penalty or a longer term of imprisonment."

In *Tirado*, the jury found true a firearm enhancement under section 12022.53, subdivision (d). (*Tirado*, *supra*, 12 Cal.5th at p. 693.) The trial court denied the defendant's motion to strike the enhancement. (*Id.* at p. 694.) On appeal, the defendant argued that the trial court did not understand that it also had the discretion to impose an uncharged lesser included enhancement under subdivision (b) or (c) of section 12022.53. (*Tirado*, at p. 694.) The Court of Appeal rejected the argument and concluded that the trial court was not authorized to impose the lesser enhancement. (*Ibid.*) Another Court of Appeal had previously reached the opposite conclusion. (*People v. Morrison* (2019) 34 Cal.App.5th 217, 222-223 (*Morrison*).)

The Supreme Court granted review to resolve the conflict and agreed with *Morrison*, *supra*, 34 Cal.App.5th 217. (*Tirado*, *supra*, 12 Cal.5th at p. 697.) The Supreme Court "concluded that courts are not categorically prohibited from imposing uncharged enhancements and that the power to do so is not conditioned on the charged and adjudicated enhancement being legally or factually inapplicable." (*Id.* at p. 699). *Tirado* held that even though "the prosecution did not specifically allege enhancements under section 12022.53(b) or [subdivision] (c), the trial court could impose those enhancements even when the section 12022.53[, subdivision] (d) enhancement was not legally or factually inapplicable." (*Id.* at p. 697.) *Tirado* found its conclusion supported

28

by case law concerning a court's general authority to impose a lesser uncharged enhancement and by the text of section 12022.53.  (*Tirado*, at p. 697.)

Looking to the relevant case law, *Tirado* noted its conclusion is consistent with the general principle "that a court is not categorically prohibited from imposing a lesser included, uncharged enhancement so long as the prosecution has charged the greater enhancement and the facts supporting imposition of the lesser enhancement have been alleged and found true."  (*Tirado*, *supra*, 12 Cal.5th at p. 697.)  The Supreme Court cited *People v. Strickland* (1974) 11 Cal.3d 946 and *People v. Fialho* (2014) 229 Cal.App.4th 1389 (*Fialho*), among other cases, as standing for that general principle.  In *Strickland*, the Supreme Court held that a trial court could impose the lesser uncharged enhancement in section 12022 when the criteria for the charged enhancement under section 12022.5 were not met.  (*Strickland*, *supra*, at p. 961; *Tirado*, at pp. 697-698.)  Relying on *Strickland*, the Court of Appeal in *Fialho* held that the trial court did not err by imposing a lesser uncharged enhancement under section 12022.5(a) when the jury found true an enhancement under section 12022.53, subdivision (d).  (*Fialho*, *supra*, at pp. 1395, 1398-1399; *Tirado*, at p. 698.)  *Tirado* cited with approval *Fialho*'s reasoning that "[i]t would elevate form over substance" "to require 'a specific lesser included enhancement code section [to] be pleaded before [the] lesser included enhancement can be imposed.'" (*Tirado*, at p. 698.)

*Tirado* rejected the appellate court's interpretation of those cases as standing for the limited principle that a court could impose an uncharged lesser enhancement only

29

when the greater enhancement was not factually or legally supported.  (*Tirado*, *supra*, 12 Cal.5th at p. 699.)  *Tirado* explained that nothing in the cases "suggests that a trial court's power to impose an uncharged enhancement is conditioned on the charged and adjudicated enhancement being inapplicable.  Under those cases, imposition of an uncharged enhancement is permitted so long as the facts supporting its imposition are alleged and found true."  (*Ibid.*)

*Tirado* next analyzed the language of section 12022.53 to determine whether the statute limits a court's discretion to impose an uncharged lesser enhancement.  The Supreme Court concluded that it does not.  (*Tirado*, *supra*, 12 Cal.5th at pp. 699-700.)  The Supreme Court held:  "When an accusatory pleading alleges and the jury finds true the facts supporting a section 12022.53[, subdivision] (d) enhancement, and the court determines that the section 12022.53[, subdivision] (d) enhancement should be struck or dismissed under section 12022.53[, subdivision] (h), the court may, under section 12022.53[, subdivision] (j), impose an enhancement under section 12022.53(b) or [subdivision] (c)."  (*Id.* at p. 700.)  *Tirado* otherwise stated that "the statutory framework permits a court to strike the section 12022.53[, subdivision] (d) enhancement found true by the jury and to impose a lesser uncharged statutory enhancement instead."  (*Id.* at p. 692.)

The People argue that *Tirado* stands for the narrow proposition that a trial court has discretion to impose uncharged enhancements under section 12022.53 and not those contained in other statutes, such as section 12022.5(a), which defendants argue is the

uncharged lesser the trial court should consider imposing here.  We disagree with the People's characterization of *Tirado*.

To support their argument, the People rely on the language of subdivision (j) of section 12022.53, which provides that when an enhancement under section 12022.53 "has been admitted or found to be true, the court shall impose punishment for that enhancement pursuant to this section rather than imposing punishment authorized under any other law, unless another enhancement provides for a greater penalty or a longer term of imprisonment."  We agree that the text suggests that the only lesser enhancement that may be imposed when an enhancement under section 12022.53 has been found true would be another enhancement under section 12022.53.  But *Tirado* held that (1) subdivision (j) of section 12022.53 does not limit a court's discretion to impose uncharged lesser enhancements (*Tirado*, *supra*, 12 Cal.5th at pp. 699-700), and (2) "imposition of an uncharged enhancement is permitted so long as the facts supporting its imposition are alleged and found true" (*id.* at p. 699).  Moreover, the Supreme Court discussed *Fialho* with approval, and in that case an uncharged lesser enhancement under section 12022.5(a) was imposed after an enhancement under section 12022.53 was found true by the jury.  (*Tirado*, at p. 698; *Fialho*, *supra*, 229 Cal.App.4th at pp. 1393-1394.)  In addition, the court rejected the People's contention "that a trial court's power to impose an uncharged enhancement is conditioned on the charged and adjudicated enhancement being inapplicable."  (*Tirado*, at p. 699.)  For all of these reasons, we interpret *Tirado* as standing for the proposition that when only an enhancement under section 12022.53 has

31

been charged and found true, a sentencing court wishing to impose an uncharged lesser enhancement is not limited to lesser enhancements found within section 12022.53. We are bound by Supreme Court precedent. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

The People attempt to distinguish *Fialho*, *supra*, 229 Cal.App.4th 1389 as "only reaffirm[ing] the basic principles of notice and opportunity." But the Supreme Court's approving discussion of *Fialho* was not so limited. Rather, the court described *Fialho* as one of the cases illustrating the broad principle that "courts are not categorically prohibited from imposing uncharged enhancements and that the power to do so is not conditioned on the charged and adjudicated enhancement being legally or factually inapplicable." (*Tirado*, *supra*, 12 Cal.5th at pp. 698-699.)

Applying *Tirado*, we conclude that on remand the trial court may consider whether to strike defendants' enhancements under section 12022.53(b) to impose lesser uncharged enhancements under section 12022.5(a). Given our conclusion that remand for full resentencing is necessary in light of Senate Bill 567, we need not and do not address the People's alternative argument that remand for the trial court to consider imposing a lesser firearm enhancement would be futile because the record demonstrates that the trial court would not do so.

DISPOSITION

We vacate defendants' sentences on count 1.  The matter is remanded for

resentencing of Fuller and Tresvant consistent with this opinion.  In all other respects, the

judgments are affirmed.

CERTIFIED FOR PARTIAL PUBLICATION

<u>MENETREZ</u>
J.


I concur:

<u>McKINSTER</u>
J.

[E071794, *The People v. Eric Lavell Fuller, Jr., et al.*]

RAMIREZ, P. J., Concurring.

I concur in the judgment and in parts A, B, and C of the Discussion.  I also concur

with the conclusion in part D that the trial court has discretion to reduce the charged

enhancements under Penal Code section 12022.53, subdivision (b) to lesser included but

uncharged enhancements under Penal Code section 12022.5, subdivision (a).[1]  However,

I come to that conclusion, not for the reasons stated in the majority opinion, but as a

matter of straightforward statutory interpretation.

Section 12022.53 was originally enacted in 1997.  (Stats. 1997, ch. 503, § 3,

pp. 3135-3138.)  Subdivision (j) was part of that original enactment.  (*Ibid*.)  It has been

amended once; the amendment made minor wording changes but did not substantively

change its meaning.  (Stats. 2006, ch. 901, § 11.1, p. 7077.)

Subdivision (j) consists of two sentences.  The first sentence provides:  "For the

penalties in this section to apply, the existence of any fact required under subdivision (b),

(c), or (d) shall be alleged in the accusatory pleading and either admitted by the defendant

in open court or found to be true by the trier of fact."  The second sentence provides:

"When an enhancement specified in this section has been admitted or found to be true,

the court shall impose punishment for that enhancement pursuant to this section rather

---

[1]     All further references to a section are to a section of the Penal Code.  All
further references to a subdivision are to a subdivision of Penal Code section 12022.53,
unless otherwise specified.

than imposing punishment authorized under any other law, unless another enhancement provides for a greater penalty or a longer term of imprisonment."

Subdivision (h), in its current form, was enacted in 2017. (Stats. 2017, ch. 682, § 2, p. 5106.) As relevant here, it provides: "The court may, in the interest of justice pursuant to Section 1385 and at the time of sentencing, strike or dismiss an enhancement otherwise required to be imposed by this section."

In sum, then, the second sentence of subdivision (j) requires the court to "impose punishment . . . pursuant to this section . . . ." Subdivision (h), however, allows a court to "strike or dismiss an enhancement *otherwise required to be imposed by this section*." (Italics added.) Thus, subdivision (h) expressly overrides the second sentence of subdivision (j).

I recognize that "[*s*]*ection 12022.53(h)* does not authorize the *imposition* of any of section 12022.53's enhancements; it only authorizes a trial court to '*strike or dismiss* an enhancement otherwise required to be imposed by this section.' [Citation.]" (*People v. Tirado* (2022) 12 Cal.5th 688, 700, some italics added (*Tirado*).) Rather, "[*s*]*ection 12022.53(j)* is the subdivision that authorizes the imposition of enhancements under section 12022.53. It provides that for the penalties in section 12022.53 to apply, the existence of any fact required by section 12022.53(b), (c), or (d) must be alleged in the accusatory pleading and admitted or found true." (*Ibid*., italics added.)[2]

---

[2]     Significantly, *Tirado* is talking here about the first sentence of subdivision (j).

However, just as subdivisions (b), (c), and (d) provide that a defendant who meets their criteria "shall be punished" by a specified additional term, section 12022.5, subdivision (a) provides: "[A]ny person who personally uses a firearm in the commission of a felony or attempted felony *shall be punished* by an additional and consecutive term of imprisonment in the state prison for 3, 4, or 10 years . . . ." (Italics added.)

And just as the first sentence of subdivision (j) provides that the existence of any fact required under subdivision (b), (c), or (d) must be alleged and either admitted or found, section 1170.1, subdivision (e), provides: "All enhancements shall be alleged in the accusatory pleading and either admitted by the defendant in open court or found to be true by the trier of fact." Indeed, the Supreme Court has observed that "subdivision (j) is simply a restatement of section 1170.1, subdivision (e) . . . ." (*People v. Garcia* (2002) 28 Cal.4th 1166, 1175; see also *People v. Anderson* (2020) 9 Cal.5th 946, 953 [subdivision (j) "restates the same basic point" as section 1170.1, subdivision (e)."].)

In other words, subdivision (h) authorizes a trial court to strike *all* section 12022.53 enhancements, notwithstanding the second sentence of subdivision (j). Then, once those have been stricken, section 1170.1, subdivision (e) authorizes the same court to impose an uncharged lesser included enhancement under section 12022.5, subdivision (a).

The majority opinion similarly concludes that the second sentence of subdivision (j) is no obstacle, but for different reasons. I find these reasons unpersuasive.

3

First, it says, "*Tirado* held that . . . subdivision (j) . . . does not limit a court's discretion to impose uncharged lesser enhancements (*Tirado*, *supra*, 12 Cal.5th at pp. 699-700) . . . ." (Maj. opn. at p. 31.) The cited portion of *Tirado*, however, was discussing the *first sentence* of subdivision (j). The only issue in *Tirado* was whether a court could impose a lesser included enhancement under section 12022.53; the Supreme Court had no occasion to consider the effect of the *second sentence* of subdivision (j). "'It is axiomatic that cases are not authority for propositions not considered.' [Citation.]" (*People v. Jennings* (2010) 50 Cal.4th 616, 684.)

Second, the majority opinion relies on *People v. Fialho* (2014) 229 Cal.App.4th 1389. (Maj. opn. at p. 31.) There, the jury found true enhancements under subdivision (d); however, none of the section 12022.53 enhancements applied, because the defendant had been convicted of completed and attempted voluntary manslaughter, rather than murder. (*Fialho, supra,* at pp. 1393-1395.) The appellate court allowed the trial court to impose enhancements under section 12022.5, subdivision (a) instead. (*Fialho, supra,* at pp. 1394-1399.) *Fialho* did not explain how this could be squared with the second sentence of subdivision (j). Once again, cases are not authority for propositions not considered. Possibly *Fialho* did not see the second sentence of subdivision (j) as an obstacle because there, the subdivision (d) enhancements were invalid. If so, it is hardly authority for disregarding subdivision (j) here.

Third, the majority opinion says, "*Tirado* held that . . . 'imposition of an uncharged enhancement is permitted so long as the facts supporting its imposition are

4

alleged and found true' [citation]." (Maj. opn. at p. 31.) This ignores *Tirado*'s statement that it is the first sentence of "[*s*]*ection 12022.53(j)* . . . that authorizes the imposition of enhancements under section 12022.53." (*Tirado* at p. 700.) In our case, the first sentence of subdivision (j) does not apply; hence, it is necessary to find some other source of statutory authority. As discussed, I find it in sections 12022.5 and 1170.1.

I therefore write separately.

RAMIREZ         
P. J.

5